## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

AERSALE, INC.,
a Delaware Corporation,

     Plaintiff,

v.                                                                                              No.


THE CITY OF ROSWELL, NEW MEXICO,
a New Mexico Municipal Corporation,

     Defendant.


## VERIFIED COMPLAINT FOR PRIMA FACIE TORT
## AND DECLARATORY JUDGMENT

COMES NOW Plaintiff AerSale, Inc. ("AerSale" or "Plaintiff"), by and through its attorneys, Rodey, Dickason, Sloan, Akin & Robb, P.A. (Charles J. Vigil, Charles R. Hughson, Jenica L. Jacobi), for its complaint against Defendant, the City of Roswell ("Roswell" or "Defendant"), for prima facie tort and declaratory judgment, alleges and states as follows:

### Parties

1.     AerSale is a publicly traded company incorporated under Delaware law and headquartered in Florida.

2.     Roswell is a municipal corporation incorporated under the law of the State of New Mexico.

### Jurisdiction and Venue

3.     The Court has subject matter jurisdiction under 28 U.S.C. 1332(a)(2). There is complete diversity and the amount in controversy exceeds $75,000, as shown further herein.

3719415.1

## General Allegations

4.      AerSale is a global supplier of aftermarket commercial jet aircraft, engines, original equipment manufacturer used serviceable material, maintenance, repair, and overhaul and engineering services to passenger and cargo airlines, government entities, leasing companies, multinational manufacturers and independent maintenance, repair, and overhaul companies (collectively AerSale's "Business").

5.      Roswell owns and operates the Roswell Air Center ("ROW"), an airport in Chaves County, New Mexico, and has control over security within an area known of an Airport Operations Area ("AOA"), including issuance, retraction, and suspension of badges required for lawful presence of persons within the AOA ("Badges").

6.      AerSale has conducted business at ROW for at least twelve (12) years under short-term lease agreements (typically with terms of five (5) years), including for lease of buildings, hangars, ramp areas, and parking lots.

7.      In particular, but not by way of limitation, AerSale and Roswell are parties to a Lease Agreement, dated May 9, 2019, respecting Hangar No. 85, which AerSale has leased from Roswell for at least twelve (12) years.

8.       AerSale has hundreds of employees and contractors, required for its operations at ROW, that were issued Badges after screening, training, and other vetting required by Roswell and federal authorities, such as the Transportation Safety Administration ("TSA")

9.      On February 3, 2022, at the direction of the Deputy Director of ROW, Steven Christopher, the ROW police department sent officers with a canine unit into one of the hangars AerSale leases to conduct an unnecessary search of the premises.

10.     On February 4, 2022, Defendant effected a lockout of AerSale, preventing

AerSale from conducting operations at ROW, by suspending al AerSale employee Badges and

notifying AerSale that no AerSale employee was allowed in any AOA area at ROW.

11.     The lockout shut down AerSale's business for approximately 24 hours, resulting

in a loss of revenue of approximately $123,000.

12.     Defendant's stated reason for the lockout was to address alleged security

violations involving personnel without Badges being within the AOA.

13.     Defendant maintained that the interior of any hangar, including any office space

therein, is within the ROW AOA and therefore requires any person inside any part of a hangar to

have a Badge or be within the line of sight of an escort with a Badge.

14.     The lockout was not required under any applicable law or regulation.

15.     The lockout was not required under any applicable security plan for ROW.

16.     Defendant had discretion to handle its security concerns, if any, by means other

than the lockout that would have been less disruptive to AerSale's business.

17.     AerSale disputed Defendant's purported security concerns and pointed out that

Defendant's security requirements were unnecessary and more stringent than at other airports in

the United States where AerSale conducts business, none of which include hangar interiors

within their AOAs.

18.     Defendant responded by telling AerSale that the United States Transportation

Security Administration ("TSA") required Defendant to include all hangar interiors within the

ROW AOA.

19.     On information and belief, Defendant's response was untrue.

20.     On information and belief, Defendant was acting for purposes other than valid security concerns.

21.     On information and belief, Defendant was acting improperly to interfere with AerSale's business in order to harm AerSale economically and benefit a competitor of AerSale, namely Ascent Aviation Services, LLC ("Ascent").

20.     AerSale was forced to obtain litigation counsel to deal with the lockout, which resulted in AerSale and Roswell entering into a Memorandum of Understanding dated February 4, 2022, ("MOU") setting forth heightened security requirements under which Defendant would end the lockout.

21.     Without waiving any right to sue for damages, AerSale has abided by the terms of the MOU, which has required AerSale to incur $21,000 per month in unnecessary expense to meet Defendant's heighted security requirements.

22.     On January 27, 2022, Defendant issued a notice saying that no aircraft could be parked in an area of the apron around Hangar 85, as of April 1, 2022.

23.     On February 17, 2022, Defendant informed AerSale that Defendant would no longer allow AerSale to use the apron to the north and northeast of Hangar 85, and that AerSale could continue to use a smaller portion of the apron immediately to the north of Hangar 85 only if AerSale entered into a land lease.

24.     AerSale attempted to engage in discussions with Defendant about lease of the smaller portion of the apron, but Defendant was nonresponsive.

25.     On March 21, 2022, Defendant notified AerSale that it could no longer use the portion of the apron to the east of Hangar 85, where AerSale parks and actively maintains airplanes.

4

26.     AerSale has used the apron to the north, northeast, and east of Hangar 85 for at least twelve (12) years openly, with Defendant's knowledge, and without objection from Defendant.

27.     The proximity of the airplanes that AerSale parks and actively maintains along the east side of Hangar 85 to the interior of Hangar 85 is critical for the efficient conduct of AerSale's business at Hangar 85.

28.     AerSale's operations at Hangar 85 are a critical part of AerSale's business at ROW.

29.     AerSale has expended significant capital and labor in use of the apron around Hangar 85, including along the east side of the hangar.

30.     If AerSale is unable to use the apron around Hangar 85 as it has for years without objection from Defendant, AerSale will be unable to conduct business at Hangar 85.

31.     Specifically, if AerSale is unable to use the apron to the east of Hangar 85 to park and actively maintain airplanes as it has for years without objection from Defendant, AerSale will be unable to conduct business at Hangar 85.

32.     On information and belief, Defendant knows that by preventing AerSale from using the apron around Hangar 85 as it has for years without objection from Defendant, AerSale will be forced to incur expenses and time delays that make AerSale's business at Hangar 85 impossible as a practical matter and threaten AerSale's entire business at ROW.

33.     AerSale would not have entered into the Lease had it known that Defendant would no longer allow AerSale to use the apron around Hangar 85 as it had for years without objection from Defendant.

34.     On information and belief, Defendant is acting for an improper purpose in disallowing AerSale's use of the apron around Hangar 85.

35.     On information and belief, Defendant is disallowing AerSale's use of the apron around Hangar 85 as part of Defendant's ongoing efforts to harm AerSale economically and benefit Ascent, AerSale's competitor.

36.     Defendant has given AerSale until March 25, 2022, to discontinue its use of the apron around Hangar 85.

37.     Despite AerSale's long, known use of the apron around Hangar 85 without objection from Defendant, Defendant has now characterized AerSale's use of the apron around Hangar 85 as a security matter.

38.     On information and belief, Defendant has characterized AerSale's use of the apron around Hangar 85 as a security matter in order to set up a situation where it can once again revoke Badges and lockout AerSale from its operations at ROW.

39.     Defendant has refused to give AerSale assurances that it will not impose another lockout if Defendant's March 25, 2022, deadline is not met.

40.     If Defendant shuts down AerSale's business under these circumstances, AerSale's damages will be far in excess of $75,000.

## COUNT I

### (Prima Facie Tort)

41.     Plaintiff incorporates and restates all prior allegations herein.

42.     Defendant intentionally shut down AerSale's business and is intentionally trying to do so again.

6

42. Defendant intended that its actions would harm AerSale and knew with certainty that its actions would harm AerSale.

43. Defendant's actions caused harm to AerSale.

44. Defendant's conduct was not justifiable under all the circumstances.

WHEREFORE Plaintiff prays for (a) judgment against Defendant for prima facie tort, (b) an award of damages in an amount to be proven at trial, (c) an award of allowable costs, (d) an award of post-judgment interest at the statutory rate, (e) an order enjoining Defendant from interfering with AerSale's continued use of the apron around Hangar 85, and (f) for such other and further relief as the Court deems just in the circumstances.

## COUNT II

## COUNT II

## (DECLARATORY JUDGMENT)

45. Plaintiff incorporates and restates all prior allegations herein.

46. An actual case and controversy, ripe for determination exists between Plaintiff and Defendant regarding whether Plaintiff has the right to continue its long, known use of the apron around Hangar 85.

47. The Court can and should resolve this controversy under by issuing a declaratory judgment Plaintiff has the right to continue its long, known use of the apron around Hangar 85.

48. Plaintiff has a right to continue its long, known use of the apron around Hangar 85 based on theories of prescriptive easement, easement by estoppel, estoppel, and/or a license that is irrevocable for the term of the Lease.

WHEREFORE Plaintiff prays for a judgment declaring that Plaintiff has the right to continue its use of the apron around Hangar 85 for the remaining term of the Lease, and for all supplemental relief allowed under the Act.

## JURY DEMAND

Plaintiff requests a trial by jury of all matters herein triable by jury.

Respectfully submitted

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By:_____
      Charles R. Hughson
      Charles J. Vigil
      Jenica L. Jacobi
P.O. Box 1888
Albuquerque, NM 87103
Telephone: (505) 765-5900
Fax: (505) 768-7395
chughson@rodey.com
cvigil@rodey.com
jjacobi@rodey.com

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 25, 2022        Signed:_____
                                   Randy Phelps