IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AERSALE, INC.,
a Delaware Corporation,

    Plaintiff,

v.                                                                                            Case No.   2:22-cv-00218-GBW-KRS

THE CITY OF ROSWELL, NEW MEXICO,
a New Mexico Municipal Corporation,

    Defendant.

**PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff, AerSale, Inc. ("AerSale" or "Plaintiff") moves under Fed. R. Civ. P. 65(a) and (b) for issuance of a temporary restraining order and a preliminary injunction that enjoins Defendant, the City of Roswell ("Roswell" or "Defendant"), from interfering with AerSale's long, known use of the apron to the east of Hangar No. 85 at Roswell Industrial Air Center ("ROW") before the merits of Plaintiff's declaratory judgment claim, set forth in its Verified Complaint for Prima Facie Tort and Declaratory Judgment ("Complaint"), can be adjudicated.

    **1.**    **Factual Background**

The following facts are verified by the Declaration of Randy Phelps attached hereto as Exhibit 1 as well as AerSale's Verified Complaint for Prima Facie Tort and Declaratory Judgment:

AerSale is a global supplier of aftermarket commercial jet aircraft, engines, original equipment manufacturer used serviceable material, maintenance, repair, and overhaul and engineering services to passenger and cargo airlines, leasing companies, multinational manufacturers and independent maintenance, repair, and overhaul companies (collectively AerSale's "Business"). Decl. of Phelps ¶ 2.

Roswell owns and operates the Roswell Air Center ("ROW"), an airport in Chaves County, New Mexico, and has control over security within an area known of an Airport Operations Area ("AOA"), including issuance, retraction, and suspension of badges required for lawful presence of persons within the AOA ("Badges"). *Id.* ¶ 3.

AerSale and Roswell have had a longstanding business relationship. *Id.* ¶ 4. For more than twelve (12) years, AerSale has leased Hangar No. 85 ("Hangar 85") and other hangars, buildings, parking lots, and other ROW areas, from Roswell for its Business at ROW. *Id.* ¶ 5. AerSale employs hundreds of residents in and around Roswell for its operations at ROW. *Id.* ¶ 6. These employees have received screening, training, and other vetting required by Roswell and federal authorities, such as the Transportation Safety Administration ("TSA"). *Id.* AerSale generates approximately $23.8 million annual local payroll, confering significant, positive economic impact to Roswell. *Id.* ¶ 7. AerSale is presently under contract with American Airlines and United Airlines, among other companies, to maintain and repair aircraft for these companies at ROW. *Id.* ¶ 8.

As is typical of airport leases around the United States, AerSale's leases at ROW are primarily short-term leases of five (5) years or less. *Id.* ¶ 4. These leases are renewed periodically to allow AerSale to conduct continuous Business at ROW. *Id.* AerSale's

2

most recent, and current, lease of Hangar 85 is under a May 9, 2019, Lease Agreement which has a five-year lease that expires on May 31, 2024. *Id.* ¶ 5.

In 2020, Chaves County was awarded approximately $3 million dollars from the State of New Mexico for improvement of infrastructure at ROW. *Id.* ¶ 9. These funds, in addition to approximately $11 million more recently allocated by Roswell, are being used to construct infrastructure, including a hangar, at ROW for use by Ascent Aviation, LLC ("Ascent"), a competitor of AerSale. Roswell expects to recoup costs of this construction over time through a lease agreement with Ascent. *Id.* Roswell and Ascent broke ground for this construction in February 2022. *Id*.

In this context, the Roswell began a campaign of harassment of AerSale, which has culminated most recently in Roswell's demand that AerSale cease using the apron around Hangar 85, including the parking and active maintenance of airplanes on the apron[1] along the east side of Hangar 85, which will make AerSale's Business at ROW impossible. *Id.* ¶10.

As is well known to Roswell, for at least twelve (12) years, AerSale has used the apron around Hangar 85 for Business operations, including as an essential part of its operations at Hangar 85, parking and active maintenance of airplanes on the apron along the east side of Hangar 85. *Id.* ¶ 11. The location of the airplanes on the apron along the east side of Hangar 85 allows expeditious movement of parts and equipment to and from Hangar 85 and the airplanes being actively maintained there. *Id.* ¶ 14. The parking and active maintenance of airplanes on the apron along the east side of Hangar 85 is essential for AerSale's Business at ROW. *Id.*

---

[1] The "apron" or, equivalently, "ramp" is the portion of paved surface at an airport where airplanes can maneuver that is distinct from the runways, where they take off and land. Hangars at airports are located on the apron.

Roswell has long been aware of AerSale's uses of the apron around Hangar 85, including the parking and active maintenance of airplanes on the apron to the east of Hangar 85. *Id.* Roswell has never objected to AerSale's use of the apron around Hangar 85, including the parking and active maintenance of airplanes on the apron to the east of Hangar 85. *Id.* ¶ 12.

Despite AerSale's long, known use of the apron around Hangar 85, Roswell has now, improperly, characterized AerSale's use of the apron as a security matter and has demanded that AerSale cease use of the apron around Hangar 85, including the parking and active maintenance of airplanes on the portion to the east of Hangar 85, by no later than March 25, 2022. *Id.* ¶ 13. AerSale believes Roswell has engaged in this campaign of harassment in order to harm AerSale's business and benefit Ascent, its competitor, in order to further Roswell's interests in its relationship with Ascent. *Id.* ¶ 15.

Specifically, AerSale's belief that Roswell is acting for improper purposes is grounded in the chronology of events outlined in the Complaint, including the following:

On February 3, 2022, the Roswell police department sent officers with canines into one of the hangars AerSale leases to conduct an unnecessary search of the premises. *Id.* ¶ 16, 17.

On February 4, 2022, Defendant effected a lockout of AerSale, preventing AerSale from conducting operations at ROW, by suspending all AerSale employee Badges and notifying AerSale that no AerSale employee was allowed in any AOA area at ROW. *Id.* ¶ 18. Defendant's stated reason for the lockout was to address alleged security violations involving personnel without Badges being within the AOA. *Id.* Defendant maintained that the interior of any hangar, including any office space therein, is within

4

the ROW AOA and therefore requires any person inside any part of a hangar to have a Badge or be within the line of sight of an escort with a Badge. *Id.* ¶ 20. The lockout was not required under any applicable law or regulation and was not required under any applicable security plan for ROW. Defendant had discretion to handle its security concerns, if any, by means other than the lockout that would have been less disruptive to AerSale's business. *Id.* ¶¶ 20, 21.

AerSale disputed Defendant's purported security concerns and pointed out that Defendant's security requirements were unnecessary and more stringent than at other airports in the United States where AerSale conducts business, none of which include hangar interiors within their AOAs. *Id.* ¶ 22. Defendant responded by telling AerSale that the TSA required Defendant to treat all hangar interiors as being within the ROW AOA. *Id.* ¶ 23. On information and belief, Defendant's response was untrue. *Id.* ¶ 23. Based on AerSale's experience at other airports around the United States regulated by TSA, the interiors of hangars are not part of an airport's AOA. *Id.*

AerSale was forced to threaten suit and obtain litigation counsel to deal with the lockout, which resulted in AerSale and Roswell entering into a Memorandum of Understanding dated February 4, 2022, ("MOU") setting forth terms under which Defendant would end the lockout. AerSale has abided by the terms of the MOU. *Id.* ¶ 24.

Defendant has now told AerSale that its continued use of the apron around Hangar 85 is not allowed. *Id.* ¶¶ 25, 26.

In particular, on March 21, 2022, Defendant notified AerSale that it would not allow AerSale to continue its use of the apron along the east side of Hangar 85, which as discussed earlier is essential for AerSale's Business. *Id.* ¶ 26.  Roswell has given AerSale

a deadline of March 25, 2022, to comply with what it deems a security directive to cease use of the apron along the east side of Hangar 85 for parking and active maintenance airplanes. *Id*. On information and belief, Defendant has characterized AerSale's use of the apron around Hangar 85 as a security matter in order to set up a situation where it can once again revoke Badges and lockout AerSale from its operations at ROW if AerSale does not meet the March 25, 2022, deadline. *Id.* Defendant has refused to give AerSale assurances that it will not impose another lockout if Defendant's March 25, 2022, deadline is not met. *Id.*

If AerSale's use of the apron along the east side of Hangar 85 is deemed a security violation, resulting in revocation of Badges or lockout as Defendant has done before, AerSale cannot conduct Business at ROW and will be forced to shut down operations at ROW, dishonor contracts, including with American Airlines and United Airlines, and discharge its employees. *Id.* ¶ 14.

AerSale would not have entered into the Lease had it known that Defendant would no longer allow AerSale to use the apron around Hangar 85 as it had for years without objection from Defendant. *Id.* ¶ 27. Instead AerSale would have planned to transition its Business away from ROW by the expiration of the prior term of lease of Hangar 85. *Id.*

    **2.**    **Law Governing Issuance of Temporary Restraining Order and Preliminary Injunction**

The requirements for the issuance of a TRO are similar to those for the issuance of a preliminary injunction. *See* 13 J. Moore, Moore's Federal Practice ¶ 65.36(1), at 65-108 (3d ed. 2021). The primary difference between a TRO and a preliminary injunction is that a TRO may issue without notice to the opposing party and that a TRO is of limited

duration." *Guidance Endontics v. Densply Int'l*, 633 F.Supp.2d 1257, 1267 (D.N.M. 2008).

The purpose of a temporary restraining order and preliminary injunction is to preserve the status quo of the parties until trial, *see Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), so that the court may render a meaningful decision on the merits, *see Keirman v. Utah Transit Auth.*, 339 F.3d 1217, 1220 (10th Cir. 2001).

Temporary restraining orders and preliminary injunctions are appropriate where the moving party shows (i) that it will suffer irreparable injury without the injunction; (ii) that it is substantially likely to succeed on the merits of its claim; (iii) that the threatened injury to the moving party outweighs the burden, if any, of the injunction on the opposing party; and (iv) that the injunction, if issued, would not be against the public interest. *See Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992); *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999)(abrogated on other grounds by *Onyx Prop., LLC v. Board of Cnty. Comms. of Elbert Cnty.*, 838 F.3d 1039, 1043 n.3 (10th Cir. 2016)).; *Guidance Endontics*, 633 F.Supp.2d at 1267. "A threat to trade or business viability may constitute irreparable harm." *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 356 (10th Cir. 1986). Harm to goodwill and diminishment of competitive positions in the marketplace constitute irreparable harm. *See Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1156 (10th Cir. 2004) (identifying examples of irreparable harm, including "inability to calculate damages, harm to goodwill, [and] diminishment of competitive positions in marketplace"). Closing of a business and termination of jobs constitutes irreparable harm. *See Prairie Band of*

*Potawatomi Indians*, 253 F.3d at 1250; *Hexacta Inc. v. McAleenan*, No. 219CV00554RSMDWC, 2019 WL 3208867, at *6 (W.D. Wash. June 10, 2019), *report and recommendation adopted*, No. C19-554RSM-DWC, 2019 WL 3208177 (W.D. Wash. July 16, 2019) (finding irreparable harm, in part, because a company would be "required to close or restructure its U.S. operations, [and] w[ould] likely have to terminate U.S. employees").

While Fed. R. Civ. P. 65(c) appears to require the movant to give security for issuance of a temporary restraining order and preliminary injunction, the Tenth Circuit has clarified that "a trial court has 'wide discretion' under Rule 65(c) in determining whether to require security." *Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003)(quoting *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964). The purpose of giving security for a temporary restraining order or preliminary injunction is to provide a source for compensation of the costs and damages the enjoined party will sustain if wrongfully enjoined or restrained. *See* Fed. R. Civ. P. 65(c).

### 3. The Court Should Issue the Injunctive Relief Requested

In this case, the Court should issue an injunction enjoining Roswell from interfering with AerSale's continued use of the apron along the east side of Hangar 85 for parking and active maintenance of aircraft because (i) AerSale will suffer irreparable injury if the AerSale is not allowed to use the apron as it long has without objection from Defendant; (ii) AerSale is likely to succeed on the merits of its claim for declaratory judgment, (iii) the harm to AerSale if the injunction does not issue is greater than the

harm to the Defendant if the injunction does issue, and (iv) the injunction is not against public policy.

### a. Irreparable Injury

If the injunction does not issue, then if AerSale does not cease its use of the apron along the east side of Hangar 85 for parking and active maintenance of aircraft by the end of the day on March 25, 2022, then on March 26, 2022, AerSale will be in breach of Defendant's security directive and will be shut down. Decl. of Phelps ¶ 14. Defendant has refused to give AerSale any assurance that it will not shut down AerSale's business if AerSale refuses to meet the deadline. *Id.* ¶ 26. In this case, AerSale will not be able to complete business contracts it has entered into with several major commercial airlines. *Id.* ¶ 14. These major commercial airlines, and other customers, need their airplanes completed and back in operations for the purposes of national travel and commerce and AerSale's inability to complete the contracts will impede the ability of the major airlines and other customers to put the airplanes into operation. *Id.* Throughout the United States, there are only a handful of companies, including AerSale, that have operational ability within AerSale's line of Business. *Id.* If AerSale is unable to complete its contracts with major airlines and other customers, AerSale will suffer a severe reputational loss in this specialized marketplace, and its prospects of obtaining contracts from these major airlines and other customers in the future will be negatively impacted. *Id.* This damage to AerSale's goodwill, reputation, and competitive position in the marketplace would be immediate and immeasurable. Finally, if AerSale has to close the Roswell branch of its business, it will have to terminate its employees at ROW. *Id.* The

lives of these people, as well as their families, would be severely, negatively impacted and this harm, which is impossible to quantify.

There is not sufficient time before the close of business on March 25, 2022 for this Court to set and conduct a hearing on AerSale's motion for a preliminary injunction. The prospective loss of AerSale's goodwill, the inability of AerSale to conduct business, and AerSale's loss of competitive advantage in the marketplace constitute irreparable harm. *Tri-State Generation & Transmission Ass'n, Inc.*, 805 F.2d at 356; *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d at 1156; *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250; *Hexacta Inc.*, No. 219CV00554RSMDWC, 2019 WL 3208867, at *6.

### b.     Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merit it is sufficient to show that plaintiff's claims are serious and substantial and present fair grounds for litigation. *See Tri-State Generation & Transmission Ass'n, Inc.*, 805 F.2d at 358 ("When the other three requirements for a preliminary injunction are satisfied, 'it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.")

AerSale has a likelihood of success on the merits of its claim for declaratory judgment. For over twelve (12) years, AerSale has entered into a series of short-term leases, most recently the Lease, of Hangar 85, in reliance on its continued use of the apron around Hangar 85, including along the east side of Hangar 85. Without this use of the apron, AerSale could not conduct its Business at ROW and would not have entered

into any of the leases, including the Lease, of Hangar 85. Under these circumstances, the Court is likely to find that AerSale has the right to continue this use of the apron along the east of Hangar 85 by prescriptive easement, easement by estoppel, estoppel, or irrevocable license for the duration of the Lease term.

AerSale is likely to prevail on a prescriptive easement theory by its adverse use of the apron that has been open or notorious and continued without interruption for over ten years. "[An] easement by prescription is created by an adverse use of land, [sic] that is open or notorious, and continued without effective interruption for the prescriptive period (of ten years)." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 10, 133 N.M. 50. Use of real property by a non-owner is presumed to be adverse, where the other elements for a prescriptive easement are present. *Id.* ¶ 10 -12; *see also Village of Capitan v. Kaywood*, 1981-NMSC-082, ¶ 7, 96 N.M. 524, 525, 632 P.2d 1162, 1163 ("In the absence of proof of express permission, the general rule is that the use will be presumed to be adverse under claim of right."); *Sanchez v. Dale Bellamah Homes, Inc*., 1966-NMSC-040, ¶ 4, 76 N.M. 526, 529, 417 P.2d 25, 27; *Segura v. Van Dien*, 2015-NMCA-017, ¶ 9, 344 P.3d 1009 ("Although an easement by prescription without adversity was not included in the Restatement until 2000, it 'has always been present in American servitudes law.'"). The dominant estate for purposes of servitudes, including easements, may include leaseholds. *See, e.g., Wal-Go Assocs. v. Leon*, 1981-NMSC-022, ¶¶ 12-14, 95 N.M. 565, 624 P.2d 507. Here, AerSale has used the apron along the east side of Hangar 85 continuously for over ten years for parking and active maintenance of airplanes in a manner that was open and notorious. Thus the Court can and should presume adversity and find that all elements for prescriptive easement are met.

New Mexico courts have not expressly adopted the doctrine of easement by estoppel, although they have indicated the applicability of the doctrine. S*ee Luevano v. Maestas*, 1994-NMCA-051, ¶ 14, 117 N.M. 580, 874 P.2d 788 ("On some facts, long-standing use of a road coupled with inaction by the landowner may give rise to an easement by estoppel."); *Luchetti v. Bandler*, 1989-NMCA-048, ¶ 14, 108 N.M. 682, 777 P.2d 1326 (assuming without deciding that easements may arise by estoppel in New Mexico). The doctrine is defined in the Restatement (Third) of Property (Servitudes) as follows:

> If injustice can be avoided only by establishment of a servitude, the owner or occupier of land is estopped to deny the existence of a servitude burdening the land when:
>
> (1)   the owner or occupier permitted another to use that land under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked, and the user did substantially change position in reasonable reliance on that belief; or
>
> (2)   the owner or occupier represented that the land was burdened by a servitude under circumstances in which it was reasonable to foresee that the person to whom the representation was made would substantially change position on the basis of that representation, and the person did substantially change position in reasonable reliance on that representation.

Restatement (Third) of Prop.: Servitudes § 2.10 (2000); *see also Young v. Seven Bar Flying Serv., Inc.*, 1984-NMSC-069, ¶ 9, 101 N.M. 545, 685 P.2d 953 (describing elements of estoppel). Here, if AerSale's use of the apron around Hangar 85 was permissive, then Roswell, the owner, has permitted such use under circumstances in which it was reasonable to foresee that AerSale would substantially change its position believing that the permission would not be revoked. AerSale in fact substantially changed its position by its successive leases of Hangar 85, including under the Lease, in

reliance on that belief. Thus, Roswell should be estopped to deny AerSale's continued use of the apron around Hangar 85.

Alternatively, if the Court finds that AerSale's use was permissive and does not apply easement by estoppel or estoppel more generally, AerSale is likely to prevail on the merits on its claim that it is entitled to an irrevocable license to use the apron around Hagnar 85 for the remainder of the Lease term by reason of its expending substantial capital and labor in the exercise of the license. Restatement (First) Property, § 519.

AerSale's substantial likelihood of success on the merits of its claim for declaratory judgment favors issuance of the injunction.

### c.     Relative Hardships

The issuance of a preliminary injunction will not harm Roswell. Roswell will continue to receive AerSale's lease payments and AerSale will continue to use the apron on the east side of Hangar 85, as it has for over a decade without objection. If Roswell is enjoined from prohibiting such use prior to a determination on the merits of the claims, it will simply continue to be in the same position it has willingly been in for over a decade. To the extent that the City is able to demonstrate any harm, the threatened injuries to AerSale and its employees greatly outweigh it. *See Tri-State Generation & Transmission Ass'n, Inc.,* 805 F.2d at 357 ("Balanced against the possible dire consequences to [movant's] existence, any injury incurred . . . from mere postponement . . . is neither exceptional nor uncompensable with a money award. . . . [W]e believe that the relative harm that would occur by maintaining the status quo until the trial court has put its imprimatur on a resolution of the underlying issue is less than the harm that would flow

from allowing [respondent] to immediately sell its assets."). The relative hardship weighs substantially in favor of granting the requested injunction.

### d. Public Policy

Issuing the injunction serves the public interest because it ensures that AerSale's business at ROW, including its providing jobs to over 300 residents in and around Roswell, and its vital contributions to national travel and commerce, will not be abruptly discontinued. While there is a public policy served by Defendant's management and operation of ROW, Plaintiff is a sophisticated business that operates at airports around the United States and abides by all applicable regulations. Plaintiff has operated at ROW successfully for over a decade, including by its use of the apron around Hangar 85. There is no reason to think that Plaintiff's continued operations would interfere with the public policies served by Defendant's management and operation of ROW.

### 4. Notice

Plaintiff is sending this Motion and the proposed temporary restraining order, attached as Exhibit 1, by email to Parker Patterson Parker at p.patterson@roswell-nm.gov. Mr. Patterson is the Roswell city attorney with whom Plaintiff's undersigned counsel has been in active communications about this matter, including by email. Under the circumstances, this constitutes sufficient notice under Fed. R. Civ. P. 65(b)(1).

### 5. Security

The Court should exercise its discretion not to require security to be given. As argued above, any harm to Defendant by issuance of the injunction is minimal or nonexistent. Security should not be required. In the event, however, that the Court does require security, AerSale stands ready to post a bond or obtain a letter of credit in an

amount sufficient to cover any costs and damages to Defendant for wrongful issuance of the injunction.

### 6. Conclusion

For the foregoing reasons the Court should issue the temporary restraining order in substantially the form attached as Exhibit 2 and should issue a preliminary injunction, with the same injunctive relief, pending the outcome of trial on AerSale's claim for declaratory judgment.

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: /s/ Charles R. Hughson
Charles R. Hughson
Charles J. Vigil
Jenica L. Jacobi
P.O. Box 1888
Albuquerque, NM 87103
Telephone: (505) 765-5900
Fax: (505) 768-7395
chughson@rodey.com
cvigil@rodey.com
jjacobi@rodey.com
*Attorneys for Plaintiff AerSale, Inc.*