UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

AERSALE, INC.
*a Delaware Corporation*,

    Plaintiff,

v.                                                                              No. 22-cv-0218 MIS/DLM

THE CITY OF ROSWELL, NEW MEXICO,
*a New Mexico Municipal Corporation*;
STEPHEN CHRISTOPHER; and
SCOTT STARK,

    Defendants.

## ORDER GRANTING MOTION TO COMPEL

**THIS MATTER** is before the Court on AerSale Inc.'s Motion to Compel. (Doc. 83.) The Motion is fully briefed. The only issue the Motion presents is the information AerSale requests in Interrogatory 4 from its First Set of discovery requests. In Interrogatory 4, AerSale requests the client list of Stephen Christopher's business, Steve Christopher Consulting. The Court will grant the motion because Christopher failed to demonstrate the information Interrogatory 4 seeks constitutes a trade secret.

### I.    Background

#### A.  Parties and Underlying Facts

AerSale, Inc. (AerSale) brought this action on March 25, 2022 (Doc. 1), and filed its Second Amended Complaint on February 27, 2023 (Doc. 38). AerSale is a global aftermarket supplier of aircraft material and services to a wide spectrum of clients involved in aircraft operation and maintenance. (*Id.* ¶ 6.) The City of Roswell (Roswell) owns and operates the Roswell Air Center (ROW) and has control over security at ROW. (*Id.* ¶ 7.) Although his employment has been terminated since this action began (*id.* ¶ 34), Scott Stark was ROW Director (Doc. 38-1 at 6), and

Stephen Christopher was ROW Deputy Director during the events alleged in the Second Amended Complaint. (Doc. 38 ¶ 11.)

AerSale's Second Amended Complaint[1] raises three general issues: first, Roswell's allegedly discriminatory funding of a new airport hangar; second, Christopher's alleged discriminatory treatment of AerSale due to a potential conflict of interest; and third, a dispute regarding AerSale's right to use a parcel of land over which the Bureau of Land Management claims it needs exclusive access. (Docs. 38 at 7–10; 38-1.) The information AerSale requests does not relate to the third issue—the land right dispute with BLM. The Court will exclude that issue from its summary of the Second Amended Complaint.

    a.  *Allegedly Illegal Funding of Ascent Aviation Hangar*

On February 24, 2022, Roswell entered into an agreement with Ascent Aviation Services (Ascent Aviation), a direct competitor of AerSale, to build a large hangar at ROW for Ascent. (Doc. 38 ¶ 29.) AerSale alleges Roswell violated its due process rights by approving the use of funds for that hangar without allowing public comment. (*Id.*) AerSale further alleges that because the ROW improvement fund was insufficient to cover the cost of the new hangar, Roswell authorized inter-fund loans into a single fund to finance the Ascent Aviation hangar project. (*Id.*; Doc. 38-1 at 3.) AerSale claims that such funding is not available to it or to any other airport operator. (Doc. 38-1 at 3.) Moreover, AerSale states that the financial report Roswell submitted on the hangar indicates Roswell is paying an illegal interest rate in violation of an FAA Order. (*Id.*; Doc. 38 ¶ 29.)

---

[1] For simplicity, the Court condensed the following claims alleged in the Second Amended Complaint into the three issues listed above: <u>Count I</u>: Violations of 42 U.S.C. § 1983; <u>Count II</u>: Conspiracy to Violate 42 U.S.C. § 1983; <u>Count III</u>: Conspiracy to Violate Civil Rights under 42 U.S.C. §§ 1985(2),(3); <u>Count IV</u>: Negligence; <u>Count V</u>: Breach of the Covenant of Good Faith and Fair Dealing; <u>Count VI</u>: Declaratory Judgment. (Doc. 38 at 7–10.)

   b. *Christopher's Allegedly Punitive Interactions with AerSale*

 AerSale has leased space at ROW for at least 12 years through short-term lease agreements, with the last one dated May 9, 2019. (*Id.* ¶¶ 8–9.) On February 4, 2022, Christopher, allegedly with Roswell's knowledge and in coordination with Stark, executed a raid on AerSale's leased space and suspended all AerSale employee badges, thereby locking out and preventing Plaintiff from conducting business at ROW. (*Id.* ¶¶ 11–12.) According to the Complaint, Christopher stated he conducted the raid and lockout due to alleged security violations within the Aircraft Operations Area (AOA). (*Id.* ¶ 13; Doc. 38-1 at 4.) Christopher allegedly claimed that AerSale employees and guests did not have the necessary authorization under the ROW Airport Security Policy (ROW Policy) to be in the hangar. (Doc. 38-1 at 4.)

 AerSale expressed its belief that the ROW Policy did not apply inside the hangars, but Christopher stated it did. (Doc. 38-1 at 4.) ROW and AerSale drafted a Memorandum of Understanding (MOU) allowing AerSale to resume operations if it provided additional security personnel on a short-term basis to ensure the hangar was secure. (*Id.*) After signing the MOU, Christopher allowed Plaintiff to read the ROW Policy, and AerSale asserts that the ROW Policy does not reference the inside of hangars. (*Id.*) The MOU provided that Plaintiff and ROW would negotiate a security plan, but ROW has declined to do so, requiring AerSale to continue employing the additional security personnel. (*Id.*)

 AerSale also alleges that Christopher penalized it improperly and excessively. Christopher allegedly defined non-security related infractions (e.g., speeding) as security violations and suspends the employee's badge for 30 days rather than assessing penalties or requiring remedial actions. (*Id.* at 5.) AerSale additionally claims Christopher accused it of violating the engine run policy at ROW by not conducting an engine run safely and suspended AerSale's ability to conduct

3

engine runs indefinitely. (*Id.*) AerSale gave Christopher records establishing it performed the engine run in accordance with procedures ROW had accepted for years, under the supervision of an airport employee, and with constant communication with the airport tower. (*Id.*) AerSale asked Christopher to provide a copy of the engine run policy it allegedly violated, but he replied that ROW was still in the process of developing a detailed engine run policy. (*Id.*).

At a Roswell City Council meeting after AerSale instituted this lawsuit, Christopher was physically escorted from the meeting for allegedly verbally assaulting an AerSale employee. (Doc. 38 ¶ 32.) Christopher, who is no longer employed at ROW, is also facing felony charges for fraud or attempted fraud while acting in his capacity as ROW Deputy Director. (*Id.* ¶ 34.)

In its Motion to Compel, AerSale highlights what it claims is evidence of a potential connection between Christopher and Ascent Aviation. AerSale attaches evidence of Christopher's professional social media, which states that prior to moving to New Mexico in 2017, he owned a company called Ascent Management Services, LLC. (Ascent Management). (Docs. 83 at 3; 83-2 at 3.) Plaintiff alleges that the similarity in names between Ascent Management and Ascent Aviation raises the possibility the two are linked. (Doc. 83 at 3.)

### B. Procedural History

On July 3, 2023, AerSale served Christopher with the First Set of Requests for Admission, Interrogatories, and Requests for Production. (Doc. 83 at 1–2 (citing Doc. 83-1 at 2)[2].) At issue here is only Interrogatory 4. (*Id.*) On July 28, 2023, Christopher objected to Interrogatory 4. (*Id.* at 2.) On September 7, 2023, the Court extended the deadline for AerSale to file a motion to compel to September 28, 2023. (Doc. 79.) On September 28, 2023, AerSale filed a Motion to Compel

---

[2] Document 83-1 is an excerpt from the First Set of discovery requests. For clarity, the Court will refer to the CM/ECF pagination rather than to the document's internal pagination.

Christopher's response to Interrogatory 4. (Doc. 83.) [3] Christopher filed a response on October 12, 2023, and AerSale replied on October 26, 2023. (Docs. 86; 89.)

### C. Disputed Discovery Request

In Interrogatory 4, AerSale requests information regarding Christopher's client list: "Please provide a complete list of everyone to whom Steve Christopher Consulting provided services and, for each person on the list, provide any known contact information, the approximate time the services were provided, and a brief description of the services." (Doc. 83-1 at 2.) Christopher made the following objection:

> Defendant Christopher objects to this request as overbroad and unduly burdensome because it is not limited in time or scope. Defendant Christopher further objects to this request to the extent that it seeks confidential proprietary business information. Finally, Defendant Christopher objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence, and it is not proportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit.

(*See id.*)

## II. Relevant Law

### A. Standard of Review

"Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and provides that '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *Romero v. Core Civic, Inc.*, No. 1:21-cv-0544 KG/KRS, 2022 WL 4482733, at *2 (D.N.M. Sept. 27, 2022) (quoting Fed. R. Civ. P. 26(b)(1)). "Relevant evidence is that which 'has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action.'"

---

[3] AerSale states that in its last good faith discussion with Christopher, on September 25, 2023, it offered to resolve the matter by participating in an informal discovery hearing with the Court, but Christopher declined, leading AerSale to file the motion to compel. (*Id.* at 2.)

*Id.* (quoting Fed. R. Evid. 401). Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

However, "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) ("Under our rules, parties to civil litigation are given broad discovery privileges."). "Nonetheless, the Court is not required to permit the parties to engage in fishing expeditions in the hope of supporting their claims or defenses." *Romero*, 2022 WL 4482733, at *2 (citing *Landry v. Swire Oilfield Servs.*, L.L.C., 323 F.R.D. 360, 375 (D.N.M. 2018)). "In addition, the Tenth Circuit 'reviews [a] district court's ruling [on a discovery motion] for abuse of discretion.'" *Vargas v. Norris*, No. 22-cv-0182 WJ/GJF, 2023 WL 1070471, at *2 (D.N.M. Jan. 27, 2023) (quoting *United States v. Muhtorov*, 20 F.4th 558, 629–30 (10th Cir. 2021)).

## B. Invoking Privilege During Discovery

"A party can resist disclosure by asserting a privilege, but that party must expressly invoke the specific privilege by name and describe 'the nature of the [withheld matter] in a manner that . . . will enable other parties to assess the [privilege] claim' without divulging the privileged contents themselves." *Garcia v. Bd. of Cnty. Comm'rs for Cnty. of Doña Ana*, No. 21-cv-0485 DHU/GJF, 2023 WL 22122, at *2 (D.N.M. Jan. 3, 2023) (quoting Fed. R. Civ. P. 26(b)(5)(A)). "If the party seeking discovery contests the privilege's applicability, the Federal Rules of Civil Procedure allow it to request judicial assistance." *Id.* (citing Fed. R. Civ. P. 37(a)(3)). "A court

6

will order disclosure unless the party asserting the privilege successfully carries the burden of establishing its applicability." *Id.* (citing *United States v. Jarvison*, 409 F. 3d 1221, 1231 (10th Cir. 2005)). Common law "governs a claim of privilege [except] in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501.

### C. Trade Secret Information

Under federal law, "there is no absolute privilege for trade secrets and similar confidential information." *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 362 (1979) (citations omitted). A court may issue a protective order limiting disclosure of trade secrets, but to obtain a protective order, a party "must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009) (quotation omitted). A trade secret is defined as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3). Even if information is deemed to be a trade secret, a party may nevertheless obtain it if they "establish that the disclosure . . . is relevant and necessary to the action." *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1190 (quotation omitted).

Under New Mexico law, "[t]wo avenues are available to a party seeking to protect a trade secret: establishing a privilege or obtaining a protective order." *Pincheira v. Allstate Ins. Co.*, 190 P.3d 322, 330 (N.M. 2008). "Common to both rules[, however,] is the requirement to show that the information comprises a trade secret[, and] the party opposing discovery or production must first make a good faith claim that the materials it seeks to protect comprise trade secrets." *Id.* A trade secret is defined as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique or process, that:
>
> (1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.M.S.A.1978, § 57-3A-2(D). In New Mexico, a court must look to factors set out in *Pincheira*[4] to determine the existence of a trade secret but may nevertheless order disclosure of a trade secret, subject to a protective order. 190 P.3d at 327; Rule 11-508(A),(C) NMRA.

### III. Discussion

As an initial matter, the Court finds that the parties did not clearly address the issue of whether federal or state law applies, so it will analyze whether disclosure is appropriate under both. Christopher argues only federal law applies, but in his argument against disclosure, he cites cases analyzing trade secrets under federal and state law. (Doc. 86 at 8.) AerSale contends that both federal and state law govern but does not explain how that should impact the analysis. (Doc. 89 at 2, 8–9.) The Court finds disclosure is appropriate under state and federal law. *See Lodestar Anstalt.*

---

[4] As the Court explains below, Christopher presents no meaningful argument on the second prong of the statute— efforts at maintaining the secrecy of the information. Accordingly, the Court will not discuss the *Pincheira* factors because there is no meaningful analysis it can undertake.

*v. Route 66 Junkyard Brewery*, CV 17-0062 JCH/JHR, 2019 WL 1795535, at *6, n. 1 (D.N.M. Apr. 24, 2019) (noting that the information sought in the case was not protected under federal law but was nevertheless protected under New Mexico law).

> **A. Interrogatory 4 is relevant to AerSale's claims and proportional to needs of the case and Christopher's boilerplate objection does not demonstrate it is overbroad or unduly burdensome.**

The Court finds that Interrogatory 4 is relevant. AerSale alleges Christopher's punitive behavior toward its employees was either in contravention of ROW policy or not based on any policy at all. (Doc. 83 at 3–6.) AerSale also alleges that Christopher has a connection to Ascent Aviation, which motivated his punitive behavior towards its employees. (*Id.*) The Court finds that Christopher did not address whether Interrogatory 4 is relevant in his objection or in his Response. (*See* Docs. 83-1 at 2; 86 at 3–9.) The information in Interrogatory 4 may reveal a connection between Christopher's personal interests and the allegations in the Complaint—i.e., the requested discovery has a tendency to make a relevant fact more or less probable. *See* Fed. R. Civ. P. 26(b)(1) (relevant material is discoverable); Fed. R. Evid. 401 (defining relevance). Whether such a connection exists may certainly be of consequence in determining the outcome of a number of AerSale's claims.

The Court finds that Interrogatory 4 is proportional. AerSale argues Interrogatory 4 is proportional because the Inter-Fund Loan is a sum of money not available to any other operator at ROW, the loan itself may be illegal, the amount in controversy is significant and continues to increase, the information Christopher would keep as a matter of course and thus is easily accessible, and whether there is a link between Christopher and Ascent is a key issue in this matter. (*See* Doc. 83 at 3–4.); *see also* Fed. R. Civ. P. 26(b)(1) (defining proportionality as depending on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative

9

access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"). The Court agrees. The Court finds that Christopher did not address any of the factors a court must consider when determining proportionality. Accordingly, the Court finds that Interrogatory 4 is both relevant and proportional.

The Court also finds that the Interrogatory 4 is not overbroad or unduly burdensome. Christopher objected on the basis that Interrogatory 4 is "overbroad and unduly burdensome because it is not limited in time or scope[,]" without further explanation. (Doc. 83-1 at 2.) In his response brief, Christopher adds only that Interrogatory 4 will be used to retaliate against him and that disclosure is not necessary because he has already stated there is no connection. (Doc. 86 at 4–6.) However, "[a] party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Murray v. Burt*, Civ. No. 09-1150 WJ/RHS, 2010 WL 11552893, at *2 (D.N.M. Nov. 19, 2010) (quotation omitted). Christopher did not do so. Accordingly, the Court finds that Christopher's "boilerplate objections do not suffice, are not well-received by this Court, and will . . . be met with boilerplate overrulings." *Beard v. County of Stanislaus*, No. 1:21-cv-0841-DAD-SAB, 2022 WL 2704856, at *8 (E.D. Cal. July 12, 2022) (citing Fed. R. Civ. P. 34(b)(2)(B)–(C)) (subsequent citations omitted); *see also Stark-Romero v. Nat'l R.R. Passenger Co.*, Civ. No. 09-295 MV/RLP, 2009 WL 10707003, at *1 (D.N.M. Sept. 30, 2009) ("Boilerplate, blanket objections are improper.") (citation omitted).

> **B. The Court finds the information in Interrogatory 4 is not a trade secret under federal or state law because Christopher did not demonstrate any efforts to keep the information secret.**

The basis upon which Christopher seeks to prevent the disclosure of Interrogatory 4 appears to have changed, from a generic assertion of confidentiality to a more specific assertion of trade secrecy under New Mexico law. (*See* Docs. 83-1 at 2; 83-4 at 2).) The evolution in his position explains why Christopher would claim that "there is no requirement that the party opposing the disclosure [of information] establish the sensitive information constitutes a trade secret in order for the information to be entitled to protection." (Doc. 86 at 7.) As a general matter, Christopher is correct that information does not need to be a trade secret for a protective order to govern its disclosure. (*See id.* (noting that Fed. R. Civ. P. 26(c)(1)(G) and Rule 1-026(C)(8) NMRA permit entry of protective orders of sensitive information).) However, Christopher has not moved for a protective order, so his general argument is inapposite. As Christopher's statement could relate to trade secrets, the Court disagrees. To protect a trade secret under federal law, a party "must first establish that the information sought is a trade secret . . . ." *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1190 (quotation omitted). To protect a trade secret in New Mexico, the law "requires a showing that the information comprises a trade secret . . . ." *Pincheira*, 190 P.3d at 330 (citation omitted). The Court will now explain why Interrogatory 4 does not constitute a trade secret.

The definition of a trade secret under federal law and New Mexico law centers, in part, around the efforts a person takes to keep the information secret and the value it holds to the person who controls it. *See* 18 U.S.C. § 1839(3)(A) (requiring that "the owner [of a trade secret] has taken reasonable measures to keep such information secret"); N.M.S.A. 1978 § 57-3A-2(D) (requiring that the owner of a trade secret take "reasonable measures to keep such information secret").

Christopher, however, argues only that Steve Christopher Consulting's business operation details are not public, dissemination of private client information will put him at a competitive disadvantage, and AerSale intends to interfere with his clients using Interrogatory 4. (Doc. 86 at 8.)

Information is not a trade secret merely because it is not public. The owner of the information must take active efforts to ensure its secrecy. In *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.*, the Tenth Circuit determined, in part, that because the alleged trade secrets could be discovered independently they "cannot qualify as trade secrets . . . ." 584 F.2d 946, 951 (10th Cir. 1978). In *Turner W. Branch, P.A. v. Osborn*, United States District Judge Martha Vásquez determined the plaintiff satisfied the New Mexico statue by actively protecting it, maintaining it was confidential and privileged, and that the information was not known to others. CIV. No. 13-00110 MV/WPL, at *22 (D.N.M. Mar. 26, 2014).

Christopher did not allege he took *any* steps to ensure the information in Interrogatory 4 remained secret. Instead, he merely claimed that the information is "not public," —his other arguments do not relate to secrecy (Doc. 86 at 8), which the Court finds to be nothing more than a general allegation insufficient to demonstrate a trade secret. *See OsteoStrong Franchising, LLC v. Richter*, No. 1:18-cv-1184-KWR-JFR, 2020 WL 4584007, at *5–7 (D.N.M. Aug. 10, 2020). Accordingly, Christopher fails to establish a necessary element of a trade secret under both federal and New Mexico law.[5] Therefore, the Court will order Christopher to disclose the information in Interrogatory 4.

---

[5] The federal and New Mexico statutes governing trade secrets are conjunctive, requiring both proof of effort to keep information secret and demonstrating the information is economically valuable to the holder of the secret and any person to which it is disclosed. *See* 18 U.S.C. § 1839(3); N.M.S.A.1978, § 57–3A–2(D). Therefore, because Christopher failed to demonstrate he made any efforts to keep Interrogatory 4 secret, the Court need not analyze whether he would be competitively disadvantaged by the production of the information. *See United States v. Ganadonegro*, 854 F. Supp. 2d 1068, 1081 (D.N.M. 2012 ("When terms are connected by a conjunctive term in a statute—such as the term 'and'—courts normally interpret the statute as requiring satisfaction of both of the

In any event, assuming *arguendo* that Interrogatory 4 *is* a trade secret, the Court would nevertheless order its disclosure under both federal and state law. Under federal law, even if information is a trade secret, "[i]f the trade secrets are deemed relevant and necessary, the Court must determine the appropriate safeguards that should attend their disclosure." *See MIMICS, Inc. v. Vill. of Angel Fire*, CIV. NO. 99-0839 MV/ACT, 2005 WL 8164212, at *2 (D.N.M. March 22, 2005).[6] As the Court stated above, Interrogatory 4 is relevant to demonstrate whether Christopher is linked to Ascent Aviation through Steve Christopher Consulting, and it may be of consequence in a number of AerSale's claims. Under New Mexico law, disclosure of trade secrets is appropriate when denying production would result in fraud or injustice. *See Pincheira*, 190 P.3d at 332. Denying production here could prevent AerSale from discovering a potential connection between Christopher and Ascent Aviation. If such a connection exists, denying production could result in fraud and injustice by allowing Christopher to hide the motivation for his allegedly punitive treatment of AerSale and its employees. Therefore, even if Interrogatory 4 was a trade secret, the Court would order its disclosure because it is relevant and necessary and denying its production could result in fraud and injustice.

### C. Christopher's arguments are not substantially justified.

Having resolved the discovery dispute, the Court is left only to determine whether AerSale should be awarded costs and fees. (Doc. 83 at 13.) Unless the nonmovant's litigation position was, inter alia, "substantially justified," Rule 37(a)(5) obligates a federal court to impose monetary

---

conjunctive terms to trigger application of the statutory provision."); *see, e.g.*, *Hill v. Whitlock Oil Services, Inc.*, 450 F.2d 170, 173 (10th Cir. 1971) ("Because the clauses [of 28 U.S.C. § 1921] are phrased in the conjunctive, all three acts are necessary . . . .").

[6] In *MIMICS*, the Court ordered disclosure of the trade secret but required the parties to develop a protective order controlling the parameters of its use. *MIMICS*, 2005 WL 8164212, at *2. Because this is an alternative basis for ordering disclosure, however, and Christopher fell so far short of demonstrating Interrogatory 4 is a trade secret, the Court will not consider whether ordering the parties to submit a protective order is appropriate.

sanctions against the party that comes out on the losing end of a motion to compel. Fed. R. Civ. P. 37(d)(1)(A)(ii). Substantial justification requires only a "legitimate position[]," *N.M. ex rel. Balderas v. Real Estate L. Ctr.*, 429 F. Supp. 3d 996, 1008 (D.N.M. December 9, 2019) (citation omitted). A legitimate position rests soundly on any "justifi[cation] to a degree that could satisfy a reasonable person." *See e.g.*, *Lester v. City of Lafayette*, 639 F. App'x 538, 542 (10th Cir. 2016) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Indeed, Rule 37(a)(5) sets out an admittedly forgiving standard for determining whether a position is substantially justified. *See* Fed. R. Civ. P. 37(a)(5), Advisory Committee Notes, 1970 Amendment ("On many occasions, . . . the dispute over discovery between the parties is genuine, though ultimately resolved one way or [an]other . . . . In such cases, the losing party is substantially justified in carrying the matter to court."). *But see Pruess v. Presbyterian Health Plan, Inc.*, No. CIV 19-629 KG/JFR, 2022 WL 304571, at *10 (D.N.M. Jan. 12, 2022) (awarding sanctions for "stonewall[ing]" discovery requests with perfunctory answers like "it's a process" or that his clients "are working on it").

The Court finds it is appropriate to award AerSale's fees and costs. As the Court stated above, Christopher did not address whether Interrogatory 4 was relevant to the case and his arguments as to proportionality, overbreadth, and undue burden did not discuss the factors that are necessary for a court to analyze in determining whether disclosure is appropriate. Additionally, Christopher's arguments that Interrogatory 4 is nevertheless a trade secret and should not be disclosed are threadbare and raise issues and facts that are not relevant to the inquiry. With such little support for his position, it is unclear to the Court why Christopher declined Plaintiff's suggestion that they resolve the matter by an informal discovery hearing. (Doc. 83 at 2.) It is, of course, not a requirement the parties attempt to resolve a discovery dispute informally, but that decision led to the necessity of filing a motion to compel that ultimately presented no close issues.

Particularly concerning is Christopher's claim that it is not necessary to establish information is a trade secret to afford it protection. At best, the argument is irrelevant because he never moved for a protective order. At worst, Christopher attempted to obfuscate the nature of his opposition to disclosure to attempt availing himself of both the general confidentiality and state law trade secrets bases. It is also possible to interpret Christopher's claim as an outright misstatement of the law that trade secrets may be protected without first being established as trade secrets. The Court, however, finds that Christopher's argument already lacks justification, so it declines to consider the likelihood of that extreme possibility. Thus, the Court will award AerSale its fees and costs related to the Motion to Compel on the basis that Christopher's objection and position are not substantially justified.

## IV.  CONCLUSION

**THEREFORE**, for the foregoing reasons **IT IS ORDERED** that, **no later than 14 days following entry of this order,** Christopher shall supplement his response to AerSale's First Set of Requests for Admission, Interrogatories, and Requests for Production by producing all information requested in Interrogatory 4.

**IT IS FURTHER ORDERED** that AerSale shall submit a brief in support of their request for fees and costs and **no later than 14 days following the entry of this order**; Christopher shall respond within 14 days of the brief; AerSale may reply within 14 days of the response.

**SO ORDERED.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE