IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AERSALE, INC.,

       Plaintiff,

v.

                                      Case No. 2:22-cv-00218-MIS-DLM

THE CITY OF ROSWELL,
NEW MEXICO,
STEPHEN CHRISTOPHER, and
SCOTT STARK,

       Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY OF ROSWELL AND SCOTT STARK'S MOTION FOR JUDGMENT ON THE PLEADINGS**

       THIS MATTER is before the Court on Defendants City of Roswell, New Mexico and Scott Stark's Motion for Judgment on the Pleadings, ECF No. 139, filed April 26, 2024.  Plaintiff AerSale, Inc. filed a Response on May 13, 2024, ECF No. 144, to which Defendants filed a Reply on May 28, 2024, ECF No. 145.  Upon review of the Parties' submissions and the relevant law, the Court will **GRANT IN PART AND DENY IN PART** the Motion.

**I.**      **Background[1]**

       AerSale, Inc. ("Plaintiff") is a global supplier of aftermarket commercial jet aircraft, engines, and parts that also offers maintenance, repair, overhaul, and engineering services.  Second Am. Compl., ECF No. 38 ¶ 6.  The City of Roswell, New Mexico ("the City") owns and operates the Roswell Air Center ("ROW"), an airport in Chaves County, New Mexico.  Id. ¶ 7.  Plaintiff

---

[1]      The Court accepts the truth of all well-pleaded factual allegations in Plaintiff's Second Amended and Supplemental Complaint, ECF No. 38 ("Second Amended Complaint"), and draws all reasonable inferences in Plaintiff's favor.

and the City are parties to a Lease Agreement, dated May 9, 2019, respecting Hangar No. 85 at ROW, which Plaintiff has leased from the City for at least twelve years.  Id. ¶ 9.

On February 4, 2022, the Deputy Director of ROW, Defendant Stephen Christopher ("Defendant Christopher"),

> effected a search of and raid on [Plaintiff] by airport security personnel at areas of [Plaintiff]'s business at ROW where [Plaintiff] had a reasonable expectation of privacy and effected a lockout of [Plaintiff], preventing [Plaintiff] from conducting operations at ROW, by suspending all [Plaintiff's] employee badges and notifying [Plaintiff] that no [Plaintiff] employee was allowed in any AOA [Airport Operations Area] area at ROW.

Id. ¶ 11.  This was allegedly done with the City's knowledge, and in concert with, by agreement with, and at the direction of Defendant Scott Stark ("Defendant Stark").  Id.  The lockout shut down Plaintiff's business for a time, resulting in a loss of revenue of approximately $123,000, preventing Plaintiff from fulfilling its contractual obligations to customers, and causing the performance of its contracts with customers to be more expensive and burdensome.  Id. ¶ 12.

Additionally, on January 27, 2022, Defendants issued a notice to Plaintiff stating that as of April 1, 2022, no aircraft could be parked in a large area near Hangar 85 ("Zone of Exclusion") because the area needed to be used by the Bureau of Land Management ("BLM").  Id. ¶ 20. Defendants then accelerated this mandate to discontinue use of the Zone of Exclusion by March 25, 2022. Id. ¶ 21.  The City adopted Plaintiff's "exclusion from [the] Zone of Exclusion as official city policy."  Id. ¶ 22.  Plaintiff had used the Zone of Exclusion for twelve years with the City's knowledge and without objection from the City, including for parking and performing maintenance on aircraft.  Id. ¶ 24.  Plaintiff's parking and aircraft maintenance around Hangar 85, including within the Zone of Exclusion, is critical to Plaintiff's business and to the fulfillment of its contracts with its customers.  Id. ¶ 25.  Plaintiff's "exclusion from the Zone of Exclusion has harmed, is

harming, and will continue harming [Plaintiff]'s business and causing [Plaintiff] damages and threatening [Plaintiff]'s ability to operate at ROW," which, according to the Second Amended Complaint, was Defendants' goal.  Id. ¶ 28.

On February 24, 2022, at a Special Committee Meeting of the City of Roswell, "and in violation of due process and any decorum of procedure by failing to permit public comment on the use of funds," the City approved Resolution 22-12 whereby the City entered into an agreement with Ascent Aviation Services ("Ascent"), a direct competitor of Plaintiff, to plan, design and construct a large hangar at ROW for Ascent ("Ascent Hangar").  Id. ¶ 29.  The funds for construction of the Ascent Hangar consist of, in part, "an inter-fund loan in the amount [of] $11 million from the General Fund, Solid Waste and Water and Wastewater funds to the Roswell Air Center Fund and at an interest rate that may be prohibited by federal law and/or FAA regulations." Id.  The Second Amended Complaint alleges that the City "is financially motivated to assure the success of Ascent to the detriment of others, including [Plaintiff], in order to satisfy the debt incurred for the Ascent Hangar."  Id. ¶ 30.

Since Plaintiff commenced this action, Defendant Christopher has "subjected [Plaintiff] to increased arbitrary and unreasonable investigations, suspended additional badges of [Plaintiff's] employees, and prohibited [Plaintiff] from conducting activities, such as engine runs, an important part of [Plaintiff]'s business, without any legitimate basis to do so, for pretextual reasons, with the intent and effect of harming [Plaintiff]."  Id. ¶ 31.  Defendant Christopher has done all of this with the City's knowledge, and in concert with, by agreement with, and at the direction of Defendant Stark.  Id.

Additionally, Defendant Christopher "verbally assaulted an AerSale employee and witness in this case, Randy Phelps, at a meeting of the Roswell City Council such that Defendant

Christopher had to be physically escorted from the meeting in the presence of council members who apologized to Mr. Phelps." Id. ¶ 32.

Defendant Christopher and Defendant Stark are no longer employed by the City, and Defendant Christopher has been arrested and faces felony charges by the State of New Mexico for fraud and/or attempted fraud while acting in his capacity as Deputy Director. Id. ¶ 34.

On March 25, 2022, Plaintiff filed its original Complaint against the City only, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. ECF No. 1.

On February 27, 2023, Plaintiff filed the operative Second Amended Complaint against the City and, for the first time, Defendants Christopher and Stark. ECF No. 38. The Second Amended Complaint asserts the following claims:

- Count I asserts a claim under 42 U.S.C. § 1983 for violations of Plaintiff's right under the Fourth Amendment to the U.S. Constitution against unreasonable searches and seizures; its Fourteenth Amendment rights to due process and equal protection; its rights under 49 U.S.C. § 40103(e) and 24 C.F.R. Part 13; and "grant assurances, to economic nondiscrimination and against grants of exclusive use of ROW facilities to others, including Ascent and BLM[,]" id. ¶ 40;

- Count II asserts a claim under 42 U.S.C. § 1983 for conspiracy to violate Plaintiff's right under the Fourth Amendment to the U.S. Constitution against unreasonable searches and seizures; its Fourteenth Amendment rights to due process and equal protection; its rights under 49 U.S.C. § 40103(e) and 24 C.F.R. Part 13; and "grant assurances, to economic nondiscrimination and against grants of exclusive use of ROW facilities to others, including Ascent and BLM[,]" id. ¶ 42;

- <u>Count III</u> asserts a claim under 42 U.S.C. § 1985(2) and (3) for conspiracy to violate Plaintiff's civil rights "as alleged herein[,]" <u>id.</u> ¶ 44;

- <u>Count IV</u> asserts a claim for negligence, <u>id.</u> ¶¶ 48-52;

- <u>Count V</u> asserts a claim for breach of the covenant of good faith and fair dealing, <u>id.</u> ¶¶ 53-56; and

- <u>Count VI</u> seeks a declaratory judgment that "Plaintiff has the right to use the apron around Hangar 85 even when BLM may want or need to use it[,]" <u>id.</u> ¶ 59.

On October 31, 2023, the Court issued an Order granting Defendants' Motion to Dismiss the negligence claim asserted in Count IV.  ECF No. 92.

On April 26, 2024, the City and Defendant Stark (collectively, "Defendants") filed the instant Motion for Judgment on the Pleadings as to the remaining Counts.[2]  ECF No. 139.  Plaintiff filed a Response, ECF No. 144, to which Defendants filed a Reply, ECF No. 145.

## II.    **Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."  <u>Atl. Richfield Co. v. Farm Cred. Bank of Wichita</u>, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing <u>Mock v. T.G. & Y. Stores Co.</u>, 971 F.2d 522, 528 (10th Cir. 1992)).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if a complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as

---

[2]       Defendant Christopher did not join in the Motion.

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." Id.  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice.  Twombly, 550 U.S. at 555.  Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible."  Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

### III.     Discussion

Defendants move for judgment on the pleadings as to Counts I, II, III, V, and VI.  See ECF No. 139.

As an initial matter, Defendants argue that Defendant Stark is entitled to qualified immunity to the extent Plaintiff is suing him in his individual capacity and is a redundantly-named Defendant if Plaintiff is suing him in his official capacity.  Id. at 8-11.  In its Response, Plaintiff states that "[t]he context of the Complaint makes clear that Stark is sued individually."  ECF No. 144 at 11.  It argues that that Defendant Stark is not entitled to qualified immunity because he is not alleged to have been exercising police power, id. at 17-18; and Stark's alleged qualified immunity does not have "any common-law counterpart[,]" id. at 18-19.

Because the Court finds that the Second Amended Complaint fails to state a claim against Defendant Stark upon which relief can be granted, the Court does not reach the qualified immunity issue.  See Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist., No. 19, 77 F.3d 1253, 1255 (10th Cir. 1996) ("We do not reach the issue of qualified immunity if plaintiff's claim is not

actionable."); see also Hall v. Hupp, 523 F. App'x 521, 523-24 (10th Cir. 2013) (affirming dismissal of Section 1983 claims where the district court "did not reach the issue of qualified immunity" because it concluded the plaintiff failed to state a claim for relief); Quarrie v. Bd. of Regents for N.M. Inst. of Mining & Tech., Civ. No. 23-546 MV/JFR, 2024 WL 278316, at *5 n.13 (D.N.M. Jan. 25, 2024) (recommending dismissal of Fourteenth Amendment claim for failure to state a claim and declining to reach issue of qualified immunity), report and recommendation adopted, 2024 WL 1345639 (D.N.M. Mar. 29, 2024).

      **a.  Count I**

      Count I asserts a claim under 42 U.S.C. § 1983 for violations of Plaintiff's Fourth Amendment right against unreasonable searches and seizures; Fourteenth Amendment rights to due process and equal protection; rights under 49 U.S.C. § 40103(e) and 24 C.F.R. Part 13, and "grant assurances, to economic nondiscrimination and against grants of exclusive use of ROW facilities to others, including Ascent and BLM."  ECF No. 38 ¶ 40.

      Defendants argue that Count I should be dismissed because: (1) Plaintiff's remedy lies in contract, ECF No. 139 at 2-4; (2) Plaintiff does not have fundamental rights protected by substantive due process arising out of its contract with the City, id. at 4-6; (3) breach of a contractual right is not a deprivation of property giving rise to a procedural due process claim, id. at 6-7; and (4) the Second Amended Complaint fails to plausibly allege a "class-of-one" equal protection claim, id. at 7-8.

      Plaintiff argues that "corporations may sue under § 1983 to protect substantive due process rights arising from a lease with a government entity," ECF No. 144 at 8 (citing Cross Continent Dev., LLC v. Town of Akron, Colo., 742 F. Supp. 2d 1179, 1191 (D. Colo. 2010)); "to enforce the Fourth Amendment protection against unreasonable searches and seizures," id. at 8-9 (citing Hale

v. Henkel, 201 U.S. 43, 76 (1906), overruled on other grounds by Murphy v. Waterfront Comm'n

of N.Y. Harbor, 378 U.S. 52 (1964)); to enforce "the substantive due process right to be free from

government action that is so egregious as to shock the conscience," id. at 9 & n.6 (citing ECF No.

139 at 5; Cnty. of Sacramento v. Lewis, 523 U.S. 833, 837, 845-46 (1998); United Artists Theatre

Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392, 394, 396, 399-400 (3d Cir. 2003)); and "to

enforce the right to equal protection under the Fourteenth Amendment," id. (citing Dailey v. City

of Lawton, Okla., 425 F.2d 1037, 1040 (10th Cir. 1970)).  It further argues that procedural due

process "protects a corporation's right to do business."  Id. (citing United States v. Tropiano, 418

F.2d 1069, 1076 (2d Cir. 1969)).  It further argues that "a corporation may sue under § 1983 for

deprivation of rights arising under federal statutory law, such as the Airport and Airway

Improvement Act of 1982 ('AAIA'), 49 U.S.C. §[]47101 – 47175[.]"  Id. at 10 (citing Cedarhurst

Air Charter, Inc. v. Waukesha Cnty., 110 F. Supp. 2d 891, 895-99 (E.D. Wisc. 2000)).  It argues

that the Second Amended Complaint

> sufficiently alleges claims against [the City] and Stark individually under § 1983
> for deprivations of [Plaintiff]'s Fourth Amendment right to be free from
> unreasonable searches and seizures, its fundamental property right in its Lease of
> Hangar 85, its fundamental right to be free from arbitrary, wrongful government
> enforcement, its Constitutional right to equal protection, its rights under the AAIA
> and related law, including grant assurances, to use the airport on a
> nondiscriminatory and a non-exclusive basis, and its right to procedural due process
> before being deprived of the foregoing rights as well as its protected right to do
> business[.]

Id. at 11.  It argues that the City is liable under Section 1983 because "it adopted the Zone of

Exclusion as official policy and because it acquiesced in the knowledge of Stark's and

Christopher's abuses and failed to correct them after [Plaintiff]'s appeals to and communications

with [the City] requesting corrective action."  Id. at 12 (citing ECF No. 38 ¶ 33; Monell v. Dep't

of Soc. Servs., 436 U.S. 658, 694 (1978); City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988);

Randle v. City of Aurora, 69 F.3d 441, 448-49 (10th Cir. 1995)).  It argues that because the Motion

does not address the Fourth Amendment claim, the Court should not dismiss it.  Id. at 12-13.  It

further argues that Defendants' argument that Plaintiff's remedy lies in contract fails because "New

Mexico law does not provide a sufficient remedy sounding in contract."  Id. at 13.  It argues that

> [t]here is no allegation that the leases covered any part of the AOA, including the
> Hangar 85 apron. Thus the exclusion from the Zone of Exclusion and the badge
> suspensions denying necessary access to the AOA are not breaches of any express
> lease terms even though they are unlawful deprivations of protected rights.
> Moreover, Stark is not a party to the lease, so [Plaintiff] would have no contract
> remedy against him. While the unreasonable search of Hangar 85 is a breach of the
> covenant of quiet enjoyment implicit in any lease, it is also a violation of
> [Plaintiff's] Fourth Amendment rights. See Marshall v. Barlow's Inc., 436 U.S. 307,
> 312 (1978)[]("This Court has already held that warrantless searches are generally
> unreasonable, and that this rule applies to commercial premises as well as homes.").
> And while [the City's] actions are breaches of the duty of good faith and fair dealing
> implicit in the leases, to the extent that it acted in bad faith or wrongfully and
> intentionally to deny [Plaintiff] the benefit of its bargain under the leases, see, e.g.,
> Sanders v. FedEx, 2008-NMSC-040, ¶ 7 (describing what constitutes violation of
> this implied duty), they are also deprivations of rights arising under separate law,
> such as the Fourth Amendment, substantive due process protection against
> arbitrary, conscience-shocking enforcement, equal protection from intentional
> discrimination, and the right to use the airport on nondiscriminatory and non-
> exclusive terms under the AAIA and related law, which deserve to be enforced
> under tort principles, see Memphis Community School Dist. v. Stachura, 477 U.S.
> 299, 306 (1986)[]("Accordingly, when § 1983 plaintiffs seek damages for
> violations of constitutional rights, the level of damages is ordinarily determined
> according to principles derived from the common law of torts."), including
> mandatory nominal damages where actual damages cannot be proven, see Farrar v.
> Hobby, 506 U.S. 103, 121 (1992), attorney's fees, see 42 U.S.C. § 1988(b), and, as
> against Stark individually, punitive damages, see Smith v. Wade, 461 U.S. 30, 56
> (1983)[](holding that punitive damages are available under § 1983).

Id. at 13-14.  It argues that the cases upon which Defendants rely in support of their contract theory

are distinguishable because they: (1) "involve simple breaches of contract . . . without any

deprivation of enumerated rights, such as under the Fourth Amendment, substantive due process

rights, or equal protection rights, which are present in this case but would not be redressed under

contract principles[,]" id. at 14-15; and (2) "do not involve deprivation of rights under the AAIA

and related law, with the exception of" <u>Mid-Atlantic Soaring Ass'n, Inc. v. Federal Aviation</u> <u>Administration</u>, Civil Action No. RDB 05–2110, 2006 WL 1892412 (D. Md. June 29, 2006), and <u>Jetstream Aero Services., Inc. v. New Hanover County</u>, 672 F. Supp. 879 (E.D.N.C. 1987), "which mistakenly dismissed the § 1983 claims for such deprivations . . . ," <u>id.</u> at 15. It further argues that the Court should not dismiss the substantive due process claim because the Second Amended Complaint alleges conduct that is "conscience shocking[.]" <u>Id.</u> at 16. It further argues that the Court should not dismiss the equal protection claim because the Second Amended Complaint alleges that Ascent and Plaintiff were "identically situated in all pertinent respects[,]" BLM and Plaintiff were "similarly situated in all pertinent respects[,]" and Defendants "treated Ascent and BLM differently" than Plaintiff. <u>Id.</u>

In their Reply, Plaintiffs maintain that a contractual remedy is the appropriate remedy because Plaintiff's claims are contractual and not constitutional. ECF No. 145 at 1, 3-6. They further argue that the AAIA is not enforceable under Section 1983. <u>Id.</u> at 2.

Initially, the Court rejects Defendants' blanket argument that Plaintiff's remedy lies in contract. Plaintiff has not asserted a breach of contract claim and, when construed in the light most favorable to Plaintiff, the Second Amended Complaint does not allege that Defendants breached the Lease Agreement. In fact, Defendants argue that the City "exercised its rights under the lease in briefly excluding [Plaintiff] from the airport hanger [sic] and the apron of the hanger [sic]." ECF No. 139 at 5. Thus, Defendants appear to concede that the conduct giving rise to Count I— i.e., the alleged "search" and "raid" on Plaintiff at Hangar 85 and its "lockout" therefrom and "suspending all [of Plaintiff's] employee badges" and notifying Plaintiff that none of its employee were "allowed in any AOA area at ROW[,]" ECF No. 38 ¶ 11, and Plaintiff's exclusion from the apron surrounding Hangar 85, <u>id.</u> ¶ 20—was <u>not</u> a breach of the Lease Agreement giving rise to

10

contractual remedies.  See ECF No. 139 at 5.  Therefore, the Court rejects Plaintiff's broad argument that this case should be dismissed because Plaintiff's remedy lies in contract.  When construed in the light most favorable to Plaintiff, the Second Amended Complaint does not allege that Plaintiff has any contractual remedies for Defendants' alleged conduct.

The Court will address the individual rights Count I alleges Defendants violated below.

**1. Fourth Amendment right against unreasonable searches and seizures**

First, Count I alleges that Defendants violated Plaintiff's Fourth Amendment right against unreasonable searches and seizures.  ECF No. 38 ¶ 40.

"The Fourth Amendment protects the right to be free from unreasonable searches and seizures."  Big Cats of Serenity Springs, Inc. v. Rhodes, 843 F.3d 853, 865 (10th Cir. 2016) (citing U.S. Const. amend. IV).  "'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"  Id. (quoting Arizona v. Gant, 556 U.S. 332, 338 (2009)).  "It is well established that the Fourth Amendment applies not only to private homes and individuals, but also to commercial premises."  Id. (citing New York v. Burger, 482 U.S. 691, 699 (1987)).  "An owner or operator of a business thus has a reasonable expectation of privacy in commercial property," id. (citing Burger, 482 U.S. at 702; Katz v. United States, 389 U.S. 347, 360-62 (1967) (Harlan, J., concurring)), "and that expectation includes not only traditional police searches, but also administrative inspections to enforce regulations," id. (citing Burger, 482 U.S. at 699).  However, "an expectation of privacy in commercial property is 'different from, and indeed less than, a similar expectation in an individual's home.'"  Id. (citing Burger, 482 U.S. at 700).

The Court finds that Count I fails to plausibly allege that Defendant Stark and the City violated Plaintiff's Fourth Amendment rights.   Relevant here, the Second Amended Complaint alleges:

> On February 4, 2022, Deputy Director of ROW, Defendant Christopher, <u>with [the City]'s knowledge, and, on information and belief, in concert and by agreement with and at the direction of Defendant Stark</u>, effected a search of and raid on [Plaintiff] by airport security personnel at areas of [Plaintiff]'s business at ROW where [Plaintiff] had a reasonable expectation of privacy and effected a lockout of [Plaintiff], preventing [Plaintiff] from conducting operaions at ROW, by suspending all [Plaintiff's] employee badges and notifying [Plaintiff] that no [Plaintiff] employee was allowed in any AOA area at ROW.

ECF No. 38 ¶ 11 (emphasis added); <u>see also</u> <u>id.</u> ¶ 31 (alleging that "[s]ince the commencement of this action, <u>Defendant Christopher has, with [the City]'s knowledge, and, on information and belief, in concert and by agreement with and at the direction of Defendant Stark</u>, subjected [Plaintiff] to increased arbitrary and unreasonable investigations . . . .") (emphasis added).

The Court finds that the allegation that Defendant Christopher acted "in concert and by agreement with and at the direction of Defendant Stark" is vague and conclusory and unsupported by well-pleaded facts.  Therefore, it is insufficient to state a claim against Defendant Stark for violating Plaintiff's Fourth Amendment rights.  <u>See</u> <u>Merritt v. Hawk</u>, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (finding that "conclusory allegations that defendants acted 'in concert,' or 'conspired' without specific factual allegations to support such assertions are insufficient"); <u>see also</u> <u>Mondonedo v. Henderson</u>, No. 12–3082–SAC, 2014 WL 5390260, at *5 & n.12 (D. Kan. Oct. 22, 2014) (finding conclusory allegations made upon "information and belief" were insufficient to plausibly allege a claim under Section 1983).

The Court further finds that Count I fails to state a claim against the City.  To state a Section 1983 claim against a municipality, "a plaintiff must identify 'a government's policy or custom' that

caused the injury." Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 769 (10th Cir.

2013) (quoting Monell, 436 U.S. at 694).  A municipal policy or custom can take the form of

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010).  The plaintiff must also show

"that the policy was enacted or maintained with deliberate indifference to an almost inevitable

constitutional injury."  Schneider, 717 F.3d at 769 (citing Bd. of Cnty. Comm'rs of Bryan Cnty.,

Okla. v. Brown, 520 U.S. 397, 403 (1997)).  "[M]unicipal liability in a § 1983 case cannot be

established on a theory of vicarious liability."  Id. at 770.

Here, the Second Amended Complaint does not plausibly allege that a municipal policy or

custom caused Plaintiff's injuries.  Consequently, Count I fails to state a claim against the City for

a violation of Plaintiff's Fourth Amendment rights.  See Irizarry v. City & Cnty. of Denver, 661 F.

Supp. 3d 1073, 1094 (D. Colo. 2023) (finding that the plaintiff failed to state a municipal liability

claim under Section 1983 based on a custom or policy of Fourth Amendment violations).

### 2.  Fourteenth Amendment right to substantive due process

Next, Count I alleges that Defendants violated Plaintiff's right to substantive due process.

ECF No. 38 ¶ 40.[3]

---

[3]   Although the Second Amended Complaint does not specify whether Count I is asserting claim for a substantive due process violation, a procedural due process violation, or both, Plaintiff appears to argue in its Response that it is asserting both substantive and procedural due process claims.  See ECF No. 144 at 9, 11, 13-14, 16.

"Substantive due process arises from the Fourteenth Amendment's protections against governmental deprivations 'without due process of law.'"  Williams v. Berney, 519 F.3d 1216, 1220 (10th Cir. 2008) (quoting U.S. Const. amend. XIV, § 1).  "Under this framework, due process protections are accorded primarily 'to matters relating to marriage, family, procreation, and the right to bodily integrity.'"  Id. (quoting Albright v. Oliver, 510 U.S. 266, 272 (1994)).  "And, moreover, in extending these concepts to further bar 'certain government actions regardless of the fairness of the procedures used to implement them,' the Supreme Court has emphasized 'that only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'"  Id. (quoting Lewis, 523 U.S. at 840).

"What differentiates a constitutional transgression from an ordinary common law tort is a 'level of executive abuse of power . . . that . . . shocks the conscience.'"  Id. (quoting Lewis, 523 U.S. at 846).  See also Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995) ("[T]he standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience' of federal judges.'") (some internal quotation marks omitted) (quoting Collins v. City of Harker Heights Tex., 503 U.S. 115, 126 (1992)).  "In other words, the executive abuse represents 'arbitrary action of government' and requires a showing of government officials 'abusing their power, or employing it as an instrument of oppression.'"  Williams, 519 F.3d at 1220 (quoting Lewis, 523 U.S. at 845-46).  "What 'shocks [the conscience] in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstance before any abuse of power is condemned as conscience shocking.'"  Id. (quoting Lewis, 523 U.S. at 850).

"Given the latitude [courts] ordinarily afford government actors operating in their official capacities, [courts] recognize constitutional torts only 'in the narrowest of circumstances[.]'"  Id.

14

(quoting <u>Becker v. Kroll</u>, 494 F.3d 904, 922 (10th Cir. 2007)).  "The tortious conduct alleged 'must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing <u>government</u> power . . . . [It] must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" <u>Id.</u> (quoting <u>Livsey v. Salt Lake Cnty.</u>, 275 F.3d 952, 957-58 (10th Cir. 2001)).  "Not surprisingly, little governmental action is held unconstitutional under th[is] formulation[]."  <u>Id.</u> (quoting 1 Martin A. Schwartz, <u>Section 1983 Litigation</u> § 3.05[D], at 3–116 (4th ed. 2006)) (internal quotation marks omitted).

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" <u>Albright</u>, 510 U.S. at 273 (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)).  Stated differently, if a substantive due process claim falls within the ambit of a specific constitutional protection, the claim must be analyzed under the standards governing the specific constitutional protection, not under the "shocks the conscience" standard.  See <u>Dubbs v. Head Start, Inc.</u>, 336 F.3d 1194, 1203 (10th Cir. 2003) (finding that the plaintiffs' substantive due process claim was "more precisely addressed under the Fourth Amendment[,]" and therefore the "shocks the conscience" standard did not apply).

Here, Plaintiff appears to allege that the conduct giving rise to its substantive due process claim is (1) the alleged search and seizure of Hangar 85 on February 4, 2022, i.e., the same conduct giving rise to its Fourth Amendment claim, <u>see</u> ECF No. 144 at 16 (stating that Defendants' argument "ignor[es] the <u>separate basis</u> of the [substantive due process] claim under the Fourth

Amendment") (emphasis added), and (2) Plaintiff's exclusion from the Zone of Exclusion, <u>see</u> <u>id.</u> It asserts that this conduct is conscience shocking.  <u>Id.</u>

The Court finds that to the extent the substantive due process claim is premised on the "raid" on and "lockout" from Hangar 85 on February 4, 2022, ECF No. 38 ¶ 11, it must be dismissed because (1) it is predicated on a specific constitutional protection—i.e., the Fourth Amendment right against unreasonable searches and seizures, <u>see</u> <u>McRoberts v. Rosas</u>, Case No. 21-2470-DDC-TJJ, 2022 WL 4482481, at *11 (D. Kan. Sept. 27, 2022) (dismissing substantive due process claim because it fell under the Fourth Amendment); and (2) the Court has already found that the Second Amended Complaint fails to allege a Fourth Amendment violation with regard to the February 4, 2022 "raid" and "lockout," <u>see</u> <u>supra</u> Section III(a)(1).

To the extent the substantive due process claim is predicated on excluding Plaintiff from the apron around Hangar 85, the Court initially finds that it must be dismissed because the Second Amended Complaint does not plausibly allege that Plaintiff has a protected interest in the apron around Hangar 85.  <u>See</u> <u>Teigen v. Renfrow</u>, 511 F.3d 1072, 1078 (10th Cir. 2007) ("'[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest.'") (quoting <u>Hyde Park Co.</u> <u>v. Santa Fe City Council</u>, 226 F.3d 1207, 1210 (10th Cir. 2000)); <u>see also</u> <u>Steffey v. Orman</u>, 461 F.3d 1218, 1221 (10th Cir. 2006) ("A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered."); <u>Pagan v. Calderon</u>, 448 F.3d 16, 32 (1st Cir. 2006) ("Where, as here, a plaintiff's substantive due process claim challenges the specific acts of a state officer, the plaintiff must show <u>both</u> that the acts were so egregious as to shock the conscience <u>and</u> that they deprived him of a protected interest in life, liberty, or property.").  In this regard, the Second

16

Amended Complaint alleges that Plaintiff and the City "are parties to a Lease Agreement, dated May 9, 2019, respecting Hangar No. 85 ('Lease'), which [Plaintiff] has leased from Roswell for at least twelve (12) years." ECF No. 38 ¶ 9.  It further alleges that "[o]n January 27, 2022, Defendants issued a notice to [Plaintiff] saying that no aircraft could be parked in a large area of the apron to the North, Northeast, East, and Southeast of Hangar 85 ('Zone of Exclusion'), as of April 1, 2022, because the area needed to be used by the Bureau of Land Management ('BLM')." Id. ¶ 20.  Thus, even when construed in the light most favorable to Plaintiff, the Zone of Exclusion is outside the property in which Plaintiff has a leasehold interest.  Although the Second Amended Complaint alleges that Plaintiff "has used [the] Zone of Exclusion for at least twelve (12) years openly, with [the City]'s knowledge, and without objection from [the City], including for parking and active maintenance of aircraft[,]" id. ¶ 24, it does not plausibly allege that Plaintiff has a constitutionally-protected liberty or property interest in the Zone of Exclusion.  For this reason alone, the substantive due process claim fails to the extent it is predicated on excluding Plaintiff from the apron around Hangar 85.  See Lassiter v. Topeka Unified Sch. Dist. No. 501, 347 F. Supp. 2d 1033, 1048 (D. Kan. 2004) (dismissing substantive due process claim because the plaintiff failed to allege a constitutionally-protected property interest).

However, even if Plaintiff had alleged a protected interest in use of the apron around Hangar 85, Defendants' exclusion of Plaintiff from the Zone of Exclusion does not "'demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" Williams, 519 F.3d at 1221 (quoting Livsey, 275 F.3d at 957-58).  Therefore, to the extent the substantive due process claim is predicated on excluding Plaintiff from the apron around Hangar 85, it must be dismissed for failure to state a claim.

### 3.   Fourteenth Amendment right to equal protection

Next, Count I alleges that Defendants violated Plaintiff's right to equal protection.  ECF No. 38 ¶ 40.  Plaintiff appears to argue that it is asserting a "class of one" equal protection claim. See ECF No. 144 at 10, 21.

"The Equal Protection Clause of the Fourteenth Amendment provides that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" A.N. ex rel. Ponder v. Syling, 928 F.3d 1191, 1196 (10th Cir. 2019) (quoting U.S. Const. amend. XIV, § 1).  "It is 'essentially a direction that all persons similarly situated should be treated alike,'" id. (quoting A.M. ex rel. F.M. v. Holmes, 830 F.3d 1123, 1166 (10th Cir. 2016)), "and is intended 'to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents,'" id. (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).  "A corporation . . . is a 'person' under the equal protection clause."  MSM Farms, Inc. v. Spire, 927 F.2d 330, 332 (8th Cir. 1991) (citing Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania, 125 U.S. 181, 189 (1888)); see also Colo. Mont. Wyo. State Area Conf. of NAACP v. U.S. Election Integrity Plan, 653 F. Supp. 3d 861, 869 (D. Colo. 2023) ("Corporations are 'persons' within the meaning of the Fourteenth Amendment's Equal Protection clause . . . .").

"An equal protection claim may be asserted with respect to a group or a 'class of one.'" Ponder, 928 F.3d at 1196 (quoting Holmes, 830 F.3d at 1166).  "A plaintiff who 'alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment' states a claim for violation of her right to equal protection." Id. (quoting Olech, 528 U.S. at 564).  Government action has no rational basis where it is "'irrational and abusive,'" Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216 (10th Cir.

2011) (quoting <u>Jicarilla Apache Nation v. Rio Arriba Cnty.</u>, 440 F.3d 1202, 1211 (10th Cir. 2006)), and "'wholly unrelated to any legitimate state activity,'" <u>id.</u> (quoting <u>Mimics, Inc. v. Vill. of Angel Fire</u>, 394 F.3d 836, 849 (10th Cir. 2005)).  "This standard is objective—if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations."  <u>Id.</u> (citing <u>Jicarilla</u>, 440 F.3d at 1211).  The Tenth Circuit has "approached class-of-one claims with caution, wary of 'turning even quotidian exercises of government discretion into constitutional causes.'"  <u>Id.</u> (quoting <u>Jicarilla</u>, 440 F.3d at 1209).

Plaintiff argues that both Ascent and BLM are similarly situated.  ECF No. 144 at 16-17. The Court will analyze each in turn.

### A.  Ascent

As to Ascent, the Second Amended Complaint alleges, in relevant part, that on February 24, 2022, the City "entered into an agreement with Ascent Aviation Services ('Ascent'), a direct competitor of [Plaintiff], to plan, design and construct a large hangar at ROW for Ascent ('Ascent Hangar')."  ECF No. 38 ¶ 29.  The funds for construction of the Ascent Hangar consist of, in part, "an inter-fund loan in the amount [of] $11 million from the General Fund, Solid Waste and Water and Wastewater funds to the Roswell Air Center Fund and at an interest rate that may be prohibited by federal law and/or FAA regulations."  <u>Id.</u>  Plaintiffs allege that the City "was and is financially motivated to assure the success of Ascent to the detriment of others, including [Plaintiff], in order to satisfy the debt incurred for the Ascent Hangar."  <u>Id.</u> ¶ 30.

The Court first finds that the Second Amended Complaint fails to plausibly allege that Plaintiff and Ascent are similarly situated in all relevant respects.  <u>See</u> <u>Ashaheed v. Currington</u>, 7 F.4th 1236, 1251 (10th Cir. 2021) ("In the equal protection context, a person is similarly situated to others if they are alike in 'all relevant respects'—not all respects.") (citation omitted).  Although

it alleges that Ascent is a "direct competitor of" Plaintiff that contracted with the City to plan, design, and construct a new hangar at ROW, ECF No. 38 ¶ 29, it does not allege, for example, that both Ascent and Plaintiff currently lease hangars at ROW, or that Plaintiff also submitted a proposal for the planning, design, and construction of a new hangar at ROW.

Even if the Second Amended Complaint plausibly alleged that Ascent and Plaintiff are similarly situated in all relevant respects, it fails to plausibly allege that Plaintiff has been treated differently.  For example, it does not allege that both Ascent and Plaintiff currently lease hangars at ROW and Defendants only raided Plaintiff's hangar.  Nor does it allege that both Ascent and Plaintiff submitted proposals for the planning, design, and construction of a new hangar at ROW and Defendants only contracted with Ascent for the construction of a new hangar.

Finally, even if the Second Amended Complaint plausibly alleged that Ascent and Plaintiff are similarly situated in all relevant respects and that Plaintiff has been treated differently, it does not plausibly allege that there is no rational basis for the difference in treatment.  Even when construed in the light most favorable to Plaintiff, the Second Amended Complaint alleges that Ascent received favorable treatment because the funds for constructing the Ascent Hangar consist of, in part, an $11 million dollar loan, id., and the City "was and is financially motivated to assure the success of Ascent to the detriment of others, including [Plaintiff], in order to satisfy the debt incurred for the Ascent Hangar[,]" id. ¶ 30.  Unequal treatment based on fiscal considerations is not "'irrational and abusive,'" Kan. Penn Gaming, 656 F.3d at 1216 (quoting Jicarilla, 440 F.3d 1202, 1211 (10th Cir. 2006)), or "'wholly unrelated to any legitimate state activity,'" id. (quoting Mimics, 394 F.3d at 849).  See 145 Fisk, LLC v. Nicklas, 986 F.3d 759, 771-72 (7th Cir. 2021) (affirming dismissal of class-of-one equal protection claim asserted by a developer alleging that the city manager "singled it out for disparate treatment without a rational basis" because the

complaint alleged legitimate reasons for the city manager's conduct, including financial concerns); see also Janicki v. Elizabeth Forward Sch. Dist., 73 F. App'x 530, 533 (3d Cir. 2003) (affirming summary judgment in favor of school district on equal protection claim because the school district's "economic considerations are clearly legitimate governmental interests and therefore, awarding less benefits to substitute employees is rationally related to these interests"); Absher v. United States, 805 F.2d 1025, 1026 (Fed. Cir. 1986) ("It is hard to imagine a more rational basis for congressional action than fiscal restraint."); Levine v. Paterson, No. 1:10–cv–1007(NAM/DRH), 2011 WL 4593739, at *6 (S.D.N.Y. Sept. 30, 2011) (dismissing equal protection claim because the administrative withholding of compensation from employees "was rationally related to the legitimate governmental purpose of reducing state expenditures in the wake of a budgetary crisis"); Coal. for Equal Rights, Inc. v. Owens, 458 F. Supp. 2d 1251, 1260 (D. Colo. 2006) (finding that a statute exempting casinos from indoor smoking ban did not violate equal protection clause because the exemption was based, in part, on fiscal considerations, and "Plaintiffs provide no authority for the proposition that Government consideration of fiscal impacts and cost benefit analysis is improper under rational basis review").

### B.  BLM

As to BLM, the Second Amended Complaint alleges, in relevant part, that "[o]n January 27, 2022, Defendants issued a notice to [Plaintiff] saying that no aircraft could be parked in a large area of the apron to the North, Northeast, East, and Southeast of Hangar 85 ('Zone of Exclusion'), as of April 1, 2022, because the area needed to be used by the Bureau of Land Management ('BLM')."  ECF No. 38 ¶ 20.  "[The City] adopted [Plaintiff]'s exclusion from [the] Zone of Exclusion as official city policy."  Id. ¶ 22.  "On information and belief, on March 25, 2022, Defendant Christopher contacted one of Plaintiff's customers under contract and advised the

21

customer on the Hangar 85 apron that [Plaintiff] was not permitted to work on aircraft there and that the customer had to move its aircraft or be subject to consequences for non-compliance." Id. ¶ 23. "[Plaintiff]'s exclusion from the Zone of Exclusion has harmed, is harming, and will continue harming [Plaintiff]'s business and causing [Plaintiff] damages and threatening [Plaintiff]'s ability to operate at ROW, which was a goal of Defendants' unlawful actions alleged herein." Id. ¶ 28.

The Court first finds that the Second Amended Complaint fails to plausibly allege that Plaintiff and BLM are similarly situated in all relevant respects. In fact, the Second Amended Complaint does not allege that Plaintiff and BLM are similarly situated in any relevant respects. When construing the Second Amended Complaint's allegations in the light most favorable to Plaintiff, the Court can plausibly infer that Plaintiff and BLM would both like to use the Zone of Exclusion. However, the Second Amended Complaint simply does not allege sufficient facts that Plaintiff and BLM are similarly situated in all relevant respects such that the Court could reasonably infer that Defendants' alleged preferential treatment of BLM was unconstitutionally arbitrary.[4]

However, even if the Second Amended Complaint plausibly alleged that BLM and Plaintiff are similarly situated in all relevant respects, it does not plausibly allege that there is no rational basis for the difference in treatment. There are simply no allegations from which the Court could reasonably infer that Defendants' exclusion of Plaintiff from the Zone of Exclusion so that BLM could use the Zone of Exclusion was "'irrational and abusive,'" Kan. Penn Gaming, 656 F.3d at 1216 (quoting Jicarilla, 440 F.3d 1202, 1211 (10th Cir. 2006)), and/or "'wholly unrelated to any

---

[4]    Although Plaintiff's Response asserts that "it is undisputed that BLM parks aircraft on the apron for the purposes of being loaded with slurry for fire suppression during fire season[,]" ECF No. 144 at 5 n.4, this allegation is not contained in the Second Amended Complaint. And even if it was, it would support the conclusion that there is a rational basis for treating BLM differently.

legitimate state activity,'" id. (quoting Mimics, 394 F.3d at 849).  See Blair v. Raemisch, 804 F.

App'x 909, 920 (10th Cir. 2020) (affirming dismissal of prisoner's equal protection claim because

his vague allegations were insufficient to allege that another inmate was similarly situated in every

material respect or that the defendant's alleged conduct was irrational and abusive).

Accordingly, the Court finds that Count I fails to state a claim under Section 1983 for a

violation of Plaintiff's right to equal protection.

### 4.  Rights under 49 U.S.C. § 40103(e) and 24 C.F.R. Part 13

Next, Count I alleges that Defendants violated Plaintiff's rights under 49 U.S.C. §

40103(e), and 24 C.F.R. Part 13, and "grant assurances, to economic nondiscrimination and against

grants of exclusive use of ROW facilities to others, including Ascent and BLM."  ECF No. 38 ¶

40.  In its Response, Plaintiff additionally states that:

> The AAIA [Airport and Airway Improvement Act of 1982] and related federal law
> provide two rights to users of airports that receive federal funds: first a right to
> nondiscrimination, see 49 U.S.C. § 47107[(a)](1)(requiring written assurances that
> "the airport will be available for public use on reasonable conditions and without
> unjust discrimination"); second a right to non-exclusivity 49 U.S.C. § 40103(e) ("A
> person[5] does not have an exclusive right to use an air navigation facility[6] on which
> Government money has been expended.")

ECF No. 144 at 11 (footnotes in original).

"[T]o comply with [Federal Rule of Civil Procedure] 8(a)(2), the complaint must give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Burnett v.

Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting Erickson v.

---

[5]        Person includes a governmental authority. 40 U.S.C. § 40102(a)(37).

[6]        Air navigation facility includes landing areas, which include airports. 40 U.S.C. § 40102(a)(4)(a)
and (28).

Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555) (internal quotation marks omitted)).

Here, the Second Amended Complaint fails to specifically identify any right under 24 C.F.R. Part 13 that Defendant allegedly violated.[7]  Thus, the Court finds the Second Amended Complaint fails to give Defendants adequate notice of a claim against them under 24 C.F.R. Part 13.  See Price v. Blount Cnty., Ala., CASE NO. 22-3059-SAC, 2022 WL 1014789, at *3 (D. Kan. Apr. 5, 2022) (finding that the plaintiff failed to state a claim under Section 1983 for a violation of rights under the Electronic Fund Transfer Act where he cited "to the entirety of the act, 15 U.S.C. § 1693-1693r" without identifying which specific statutory provision he believed was violated).

Furthermore, the Second Amended Complaint does not mention the Airport and Airway Improvement Act of 1982 or otherwise cite 49 U.S.C. § 47101.  The Court finds that Count I's vague allegation that "Defendants' actions and failures . . . were done . . . to deprive [Plaintiff] of . . . its rights, under federal statute and regulations" is insufficient to give Defendants notice that they were being sued for a violation of the AAIA generally or 49 U.S.C. § 47101 specifically.  See Young ex rel. Young v. Ker-McGee Corp., 658 F. Supp. 3d 1028, 1040 & n.56 (E.D. Okla. 2023) (finding complaint that alleged the defendants violated "'relevant Federal and Oklahoma statutes, and relevant Federal and Oklahoma environmental statutes and regulations — including the Price-Anderson Act'" failed to provide fair notice of the claim) (citing Holler v. Cinemark USA, Inc., 185 F. Supp. 2d 1242, 1244 (D. Kan. 2002) (finding that complaint alleging that the defendant "violated unspecified 'local, state and federal statutes, guidelines and regulations' does not provide

---

[7]        24 C.F.R. Part 13 is titled: "Use of Penalty Mail in the Location and Recovery of Missing Children." See National Archives, Code of Federal Regulations Title 24, Part 13, available at https://www.ecfr.gov/current/title-24/subtitle-A/part-13 (last visited May 28, 2024).  None of the subsections of 24 C.F.R. Part 13 appear to have any relation to this case.

fair notice of his claim")).  Therefore, Count I fails to state a claim under Section 1983 for a violation of either 24 C.F.R. Part 13 or 49 U.S.C. § 47101.

Next, 49 U.S.C. § 40103(e) provides that "[a] person does not have an exclusive right to use an air navigation facility on which Government money has been expended."[8]  However, the Court finds that 49 U.S.C. § 40103(e) does not provide a private right of action.  Bowling Green v. Martin Land Dev. Co., Inc., 561 F.3d 556, 561 (6th Cir. 2009).  In Bowling Green, a disagreement arose between an airport board and a tenant of the airport over whether the lease agreement granted the tenant an exclusive leasehold interest in a ramp and apron space for aircraft parking.  Id. at 557.  The airport board sued the tenant, claiming that the tenant's claimed exclusive leasehold interest in the ramp and apron violated the "exclusive rights" provision of 49 U.S.C. § 40103(e).  Id. at 558.  The district court concluded that 49 U.S.C. § 40103 does not provide a private right of action.  Id.  On appeal, the Sixth Circuit analyzed the relevant factors in determining whether a private right of action is implicit in a statute not expressly providing one and concluded, as did the district court, that Congress did not intend to create a private right of action in 49 U.S.C. § 40103.  Id. at 559-61.  The Court is persuaded by the Sixth Circuit's analysis and adopts it. Therefore, the Court finds that to the extent Count I is predicated on a violation of 49 U.S.C. § 40103(e), it must be dismissed because Section 40103 does not provide a private right of action. See id. at 561; Carey v. Afton-Lincoln Cnty. Mun. Airport Joint Powers Bd., Case No. 07–CV– 286-D, 2008 WL 11411455, at *5 (D. Wyo. June 4, 2008) (dismissing Section 1983 claim premised on a violation of 49 U.S.C. § 40103(e) because Congress did not intend to create a private

---

[8]    The statute states that "providing services at an airport by only one fixed-based operator is not an exclusive right if—(1) it is unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide the services; and (2) allowing more than one fixed-based operator to provide the services requires a reduction in space leased under an agreement existing on September 3, 1982, between the operator and the airport." 49 U.S.C. § 40103(e).

right of action under the Section 40103(e)); <u>see also</u> <u>Interface Grp., Inc. v. Mass. Port Auth.</u>, 816

F.2d 9, 14-15 (1st Cir. 1987) (holding that 49 U.S.C. § 1349(a), the precursor to § 40103, did not

provide an implied private right of action"); <u>Montauk-Caribbean Airways, Inc. v. Hope</u>, 784 F.2d

91, 97 (2d Cir. 1986) (same).

### 5. Fourteenth Amendment right to procedural due process

Next, Count I alleges that Defendants violated Plaintiff's right to procedural due process.[9]

ECF No. 38 ¶ 40.

The Fourteenth Amendment to the U.S. Constitution states: "No State shall . . . deprive any

person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

"[T]o state a procedural due process claim, a plaintiff must establish (1) the deprivation of (2) a

constitutionally cognizable liberty or property interest, (3) without adequate due process

procedures."  <u>Abdi v. Wray</u>, 942 F.3d 1019, 1031 (10th Cir. 2019).

Plaintiff argues that its procedural due process claim is premised on being deprived of

adequate process before being deprived of its Fourth Amendment rights, substantive due process

rights, equal protection rights, "rights under the AAIA and related law, including grant assurances,

to use the airport on a nondiscriminatory and a non-exclusive basis, . . . as well as its protected

right to do business."  ECF No. 144 at 11.

Because Plaintiff has failed to allege a deprivation of a constitutionally cognizable liberty

or property interest, <u>see</u> <u>supra</u> Section III(a)(1) - (4), its procedural due process claim must be

dismissed.  <u>See</u> <u>Abdi</u>, 942 F.3d at 1034 (affirming dismissal of procedural due process claim

---

[9]       As previously mentioned, <u>see</u> Note 3, <u>supra</u>, although the Second Amended Complaint does not
specify whether Count I is asserting claim for a substantive due process violation, a procedural due process violation,
or both, Plaintiff appears to argue in its Response that it is asserting both substantive and procedural due process
claims.  <u>See</u> ECF No. 144 at 9, 11, 13-14, 16.

because the plaintiff failed to allege "he was actually deprived of any right conferred by state or federal law").

### b. Count II

Count II asserts a claim under 42 U.S.C. § 1983 for conspiracy to violate Plaintiff's Fourth Amendment right against unreasonable searches and seizures; its Fourteenth Amendment rights to due process and equal protection; its rights under 49 U.S.C. § 40103(e) and 24 C.F.R. Part 13; and "grant assurances, to economic nondiscrimination and against grants of exclusive use of ROW facilities to others, including Ascent and BLM."  ECF No. 38 ¶ 42.

Defendants argue that Count II should be dismissed because "Plaintiff's allegations are conclusory and clearly insufficient to state a conspiracy claim[,]" ECF No. 139 at 11, and because "there has been no deprivation of a constitutional right, but merely an alleged breach of contract," id.

Plaintiff argues that it "has clearly alleged deprivations of rights protected under § 1983" and "has also sufficiently alleged facts that are circumstantial evidence of an agreement among [the City], Stark, and Christopher to harm [Plaintiff] by the bad acts that deprived [Plaintiff] of protected rights."  ECF No. 144 at 20.  It argues:

> The allegations that [the City] desired to promote Ascent's and harm [Plaintiff]'s business, its knowledge that Christopher searched and shut down [Plaintiff]'s business on fabricated AOA violations, its adoption of the Zone of Exclusion as official policy, its knowledge that since the filing of this case Christopher was subjecting [Plaintiff] to increased arbitrary and unreasonable investigations, badge suspensions, and other harmful conduct for pretextual reasons to harm [Plaintiff]'s business, its city council's firsthand observation of Christopher verbally assaulting a witness in this case, and its failure to take corrective measures when [Plaintiff] brought the matters to [the City]'s attention by appeals and letters provide sufficiently detailed circumstantial evidence of that [the City] agreed with either Stark or Christopher to harm [Plaintiff] in these ways, which constitute deprivations of protected rights. The allegation that Stark authorized the search and lockout and the fact that Christopher worked as Stark's deputy presents sufficiently detailed

circumstantial evidence that Stark and Christopher agreed to harm [Plaintiff]. Both the deprivation of protected rights and the existence of a conspiracy are sufficiently alleged.

Id. at 20-21.

In their Reply, Defendants assert that dismissal is appropriate because Plaintiff has not alleged the deprivation of a constitutional right.  ECF No. 145 at 6.

To state a claim for conspiracy to violate a right protected by Section 1983, the plaintiff must plead "the existence of a conspiracy and the deprivation of a constitutional right."  Thompson v. City of Lawrence, Kan., 58 F.3d 1511, 1517 (10th Cir. 1995); see also Dixon v. City of Lawton, Okla., 898 F.2d 1443, 1449 (10th Cir. 1990) ("[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.").

Because the Court has found that Plaintiff has failed to plead the deprivation of a constitutional right, see supra Section III(a), Count II must be dismissed.  See Frederickson v. Larimer Cnty. (Code Compliance), Civil Action No. 22–cv–00262–CNS–MDB, 2023 WL 2018899, at *11 (D. Colo. Feb. 15, 2023) (recommending dismissal of Section 1983 conspiracy claim for failure to allege a violation of a constitutional right), report and recommendation adopted sub nom., Frederickson v. Kenneth, 2023 WL 2674421 (D. Colo. Mar. 29, 2023); Pendergraft v. Bd. of Regents of Okla. Colls., Case No. CV-18-0793-D, 2019 WL 7340303, at *2-3 (W.D. Okla. Dec. 30, 2019) (dismissing a Section 1983 conspiracy claim for failure to allege a violation of a constitutional right).

### c.  Count III

Count III asserts a claim under 42 U.S.C. § 1985(2) and (3) for conspiracy to violate Plaintiff's civil rights "as alleged herein."  ECF No. 38 ¶ 44.

Defendants argue that Count III fails to state a claim because the Second Amended Complaint "only includes conclusory allegations related to any conspiracy between Defendants." ECF No. 139 at 12 (citing ECF No. 38 ¶¶ 44-45).  They further argue that Count III fails because it does not allege class-based or racially discriminatory animus.  Id. (citing Archuleta v. City of Roswell, 898 F. Supp. 2d 1240, 1248 (D.N.M. 2012) (citing Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979))).

Plaintiff argues that a complaint is not required to allege that the conspirators acted with intent to deprive the plaintiff of equal protection of the laws to state a claim under 42 U.S.C. § 1985(2), ECF No. 144 at 21 (citing Kush v. Rutledge, 460 U.S. 719 (1983)); and a conspiracy motivated by invidiously discriminatory intent other than racial bias is actionable under 42 U.S.C. § 1985(3), id. (citing Griffin v. Breckenridge, 403 U.S. 88, 102 n.9 (1971)).  It argues that it has stated a claim under Section 1985(2) because it has alleged "that Defendants conspired to harm its protected rights in order to keep witnesses from testifying in this case and to prevent [Plaintiff] from maintaining this case."  Id.  It argues that it has stated a claim under Section 1985(3) because it has alleged "class-of-one as well as direct, intentional discrimination without any rational basis." Id.

In their Reply, Defendants argue that "[t]here can be no Section 1985 claim without alleged interference with civil rights, which does not exist under Plaintiff's alleged facts."  ECF No. 145 at 6 (citing Archuleta, 898 F. Supp. 2d at 1247).  They argue that the Second Amended Complaint "only includes conclusory allegations related to any conspiracy between Defendants."  id.

### 1.  Section 1985(2) deterrence claim

A claim that Defendants violated Section 1985(2) by conspiring to keep witnesses from testifying in this case requires allegations that "two or more persons in any State or Territory

conspire[d] to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully."  42 U.S.C. § 1985(2).  "The elements of a deterrence claim under section 1985(2) are (1) a conspiracy, (2) to deter testimony by force or intimidation, and (3) injury to the plaintiff."  Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994) (citation omitted).

Here, Count III contains only vague and conclusory allegations of a conspiracy.  Specifically, it alleges:

> 44. Defendants conspired to harm [Plaintiff] as alleged herein.
>
> 45. Defendant Christopher and, on information and belief, Defendant Stark acted in furtherance of that conspiracy after the commencement of this case by their concerted abuse of [Plaintiff] and its employees and Defendant Christopher's abuse of Randy Phelps.
>
> 46. Defendants intended to retaliate against [Plaintiff] for maintaining this action and against Randy Phelps from testifying in this case and to prevent [Plaintiff] from continuing this lawsuit and its employees from testifying in this lawsuit.

ECF No. 38 ¶¶ 44-46.  Count III also incorporates by reference all prior allegations asserted in the Second Amended Complaint, id. ¶ 43, only one of which is relevant here.  Specifically: "Since the commencement of this action, Defendant Christopher verbally assaulted [Plaintiff's] employee and witness in this case, Randy Phelps, at a meeting of the Roswell City Council such that Defendant Christopher had to be physically escorted from the meeting in the presence of council members who apologized to Mr. Phelps."  Id. ¶ 32.

Even construed in the light most favorable to Plaintiff, the Second Amended Complaint does not plausibly allege a conspiracy to deter testimony by force or intimidation, or an injury to Plaintiff.  The only allegations regarding any agreement between Defendants Christopher and Stark to deter Mr. Phelps from testifying in this case are wholly conclusory, and "more than mere

conclusory allegations are required to state a valid claim" under Section 1985(2).  Brever, 40 F.3d at 1126.  See also Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998) ("'Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.'") (quoting Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994)).  And Plaintiff fails entirely to allege injury from this alleged conspiracy.  Glass v. Pfeffer, 849 F.2d 1261, 1265 (10th Cir. 1988) (finding that the plaintiffs failed to allege injury under Section 1985(2)).  Consequently, Count II fails to state a claim under 42 U.S.C. § 1985(2).

## 2.  Section 1985(3) deprivation of civil rights claim

"Section 1985(3) provides a remedy for a conspiracy to violate a person's civil rights." O'Connor v. St. John's Coll., 290 F. App'x 137, 141 (10th Cir. 2008) (citing Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993)).  "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." Tilton, 6 F.3d at 686 (citing Griffin, 403 U.S. at 102-03).  Section 1985(3) "does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Id. (quoting Griffin, 403 U.S. at 101-02).  "The other 'class-based animus' language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias." Id. (citing United Bhd. of Carpenters & Joinders of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 837 (1983)).

The Court initially finds that Count III must be dismissed for failure to plausibly allege a conspiracy.  Count III alleges:

44.     Defendants conspired to harm [Plaintiff] as alleged herein.

. . .

> 47.     Defendants intended to deprive [Plaintiff] of the equal protection of and equal privileges and immunities under the law.

ECF No. 38 ¶¶ 44, 47.  Count III also incorporates by reference all prior allegations asserted in the

Second Amended Complaint, id. ¶ 43, only two of which are relevant here.  Specifically:

> 11.     On February 4, 2022, Deputy Director of ROW, <u>Defendant Christopher, with [the City]'s knowledge, and, on information and belief, in concert and by agreement with and at the direction of Defendant Stark</u>, effected a search of and raid on [Plaintiff] by airport security personnel at areas of [Plaintiff]'s business at ROW where [Plaintiff] had a reasonable expectation of privacy and effected a lockout of [Plaintiff], preventing [Plaintiff] from conducting operations at ROW, by suspending all [Plaintiff's] employee badges and notifying [Plaintiff] that no [Plaintiff] employee was allowed in any AOA area at ROW.
> . . .
>
> 31.     Since the commencement of this action, <u>Defendant Christopher has, with [the City]'s knowledge, and, on information and belief, in concert and by agreement with and at the direction of Defendant Stark</u>, subjected [Plaintiff] to increased arbitrary and unreasonable investigations, suspended additional badges of [Plaintiff] employees, and prohibited [Plaintiff] from conducting activities, such as engine runs, an important part of [Plaintiff]'s business, without any legitimate basis to do so, for pretextual reasons, with the intent and effect of harming [Plaintiff].

ECF No. 38 ¶¶ 11, 31 (emphases added).

"Section 1985(3) conspiracy claims cannot stand on 'vague and conclusory allegations'; but rather, 'must be pled with some degree of specificity.'"  <u>O'Connor</u>, 290 F. App'x at 141 (quoting <u>Ctr. for Bio-Ethical Reform, Inc v. City of Springboro</u>, 477 F.3d 807, 832 (6th Cir. 2007)). The Court finds that the allegation that Defendant Christopher acted "in concert and by agreement with and at the direction of Defendant Stark" is vague and conclusory and unsupported by well-pleaded facts.  Therefore, it is insufficient to state a claim against Defendant Stark for conspiracy under Section 1985(3).  <u>See</u> <u>Hunt v. Cent. Consol. Sch. Dist.</u>, 951 F. Supp. 2d 1136, 1177 (D.N.M. 2013) ("'Conclusory allegations that the defendants acted in concert or conspired, without specific

factual allegations to support such assertions, are insufficient to state a claim under § 1985(3).'")

(quoting Martinez v. Martinez, No. CIV 09–0281 JB/KBM, 2010 WL 1608884, at *12 (D.N.M.

Mar. 30, 2010)); Merritt, 153 F. Supp. 2d at 1225 (finding that "conclusory allegations that

defendants acted 'in concert,' or 'conspired' without specific factual allegations to support such

assertions are insufficient" to state a claim for conspiracy under 42 U.S.C. § 1985(2) and (3)); see

also Mondonedo, 2014 WL 5390260, at *5 & n.12 (finding conclusory allegations made upon

"information and belief" were insufficient to plausibly allege a claim under Section 1983).

However, even if Count III plausibly alleged a conspiracy it would be dismissed for failure

to allege "'racial, or . . . otherwise class-based, invidiously discriminatory animus[.]'" Tilton, 6

F.3d at 686 (quoting Griffin, 403 U.S. at 102). Even when construed in the light most favorable

to Plaintiff, the Second Amended Complaint alleges that Defendants discriminated against Plaintiff

because the City "is financially motivated to assure the success of Ascent to the detriment of others,

including [Plaintiff], in order to satisfy the debt incurred for the Ascent Hangar." ECF No. 38 ¶

30. However, conspiracies motivated by an economic or commercial bias are not cognizable under

Section 1985(3). Tilton, 6 F.3d at 686.

Because Count III fails to plausibly allege (1) a conspiracy and (2) racial or class-based

invidiously discriminatory animus, it fails to state a claim under 42 U.S.C. § 1985(3). See Pueblo

of Pojoaque v. New Mexico, 233 F. Supp. 3d 1021, 1139 (D.N.M. 2017) (finding that the plaintiff

failed to state a claim under Section 1985(3) because it did not allege invidious discrimination).

**d.  Count V**

Count V asserts a claim for breach of the covenant of good faith and fair dealing. ECF No.

38 ¶¶ 53-56. It asserts that the City "has acted and continues to act knowingly to deny Plaintiff

the benefit of its bargain with [the City] under its leases at ROW, including the lease of Hangar 85." Id. ¶ 54.

Defendants argue that "[a] breach of the implied provision for good faith and fair dealing is derivative in nature and requires an underlying breach of contract claim." ECF No. 139 at 13. They argue that because Plaintiff has not sued for breach of contract, Count V should be dismissed for failure to state a claim.  Id. (citing Back v. ConocoPhillips Co., No. CIV 12–0261 JB/WDS, 2012 WL 6846397, at *22 (D.N.M. Aug. 31, 2012) (citing Armijo v. N.M. Dep't of Transp., No. CIV 08–0336 JB/ACT, 2009 WL 1329192, at *7 (D.N.M. Apr. 6, 2009))).

Plaintiff argues that there can be a breach of the implied duty of good faith and fair dealing without a separate breach of contract, ECF No. 144 at 22, and attempts to distinguish Back on the facts, id. at 22-23.  It alleges that it has sufficiently alleged a breach of the implied duty of good faith and fair dealing because it has alleged that Defendants' "bad-faith and intentional and wrongful conduct" has deprived Plaintiff of "the right to do MRO[10] business at ROW." Id. at 23.

In their Reply, Defendants maintain that "breach of the implied provision for good faith and fair dealing is derivative in nature and requires an underlying breach of contract claim."  ECF No. 145 at 6-7 (citing Mackensen v. Progressive Direct Ins. Co., CIVIL ACTION No. 2:22-cv-2390, 2023 WL 2474671, at *2 (D. Kan. Mar. 13, 2023); Back, 2012 WL 6846397, at *22 (citing Armijo, 2009 WL 1329192, at *7)).

"'Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement.'"  Bourgeous v. Horizon Healthcare Corp., 872 P.2d 852, 856 (N.M. 1994) (quoting Watson Truck & Supply Co., Inc. v. Males, 801 P.2d 639, 642

---

[10]        Plaintiffs' Response states that "[c]apitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Complaint."  ECF No. 144 at 2 n.2.  However, neither the Response, the original Complaint, the First Amended Complaint, nor the Second Amended Complaint define "MRO."

(N.M. 1990), and citing Restatement (Second) of Contracts § 205 (1981)).  "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement."  Id. (citing Watson, 801 P.2d at 642).  "Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract."  Id.  "However, the implied covenant of good faith and fair dealing protects only against bad faith—wrongful and intentional affronts to the other party's rights, or at least affronts where the breaching party is consciously aware of, and proceeds with deliberate disregard for, the potential of harm to the other party."  Paiz v. State Farm Fire & Cas. Co., 880 P.2d 300, 309-10 (N.M. 1994).

Here, the Second Amended Complaint alleges that the City and Plaintiff "are parties to a Lease Agreement, dated May 9, 2019, respecting Hangar No. 85 . . . which [Plaintiff] has leased from [the City] for at least twelve (12) years."  ECF No. 38 ¶ 9.  Plaintiff's "operations at Hangar 85 are a critical part of [its] business at ROW."  Id. ¶ 26.  Plaintiff "has hundreds of employees and contractors, required for its operations at ROW, that were issued badges after screening, training, and other vetting required by Defendant Roswell and federal authorities, such as the Transportation Safety Administration."  Id. ¶ 10.

> On February 4, 2022, Deputy Director of ROW, Defendant Christopher . . . effected a search of and raid on [Plaintiff] by airport security personnel at areas of [Plaintiff]'s business at ROW where [Plaintiff] had a reasonable expectation of privacy and effected a lockout of [Plaintiff], preventing [Plaintiff] from conducting operations at ROW, by suspending all [Plaintiff's] employee badges and notifying [Plaintiff] that no [Plaintiff] employee was allowed in any AOA area at ROW.

Id. ¶ 11.  "The lockout shut down [Plaintiff]'s business for a time resulting in a loss of revenue of approximately $123,000, preventing [Plaintiff] from fulfilling its contractual obligations to

customers . . . ."  Id. ¶ 12.  The Second Amended Complaint alleges that Defendants' excuse for

the lockout—alleged security violations within the AOA—are "unfounded."  Id. ¶ 13.

Accepting these allegations as true and construing them in the light most favorable to

Plaintiff, the Court finds that the Second Amended Complaint plausibly alleges that the City

deprived Plaintiff of a benefit of the Lease Agreement—and specifically, the benefit of being able

to use Hangar 85—in bad faith.  However, because Defendant Stark is not alleged to be a party to

the Lease Agreement, the Court finds that Count V fails to state a claim against him.

The Court rejects Defendants' argument that a claim for breach of the implied covenant of

good faith and fair dealing is derivative of and dependent upon a separate breach of contract claim.

> Breach of the implied covenant of good faith and fair dealing is a separate and
> distinct claim from a breach of contract claim.  The two claims are not mutually
> dependent, and "a party may breach the implied covenant of good faith and fair
> dealing even if it did not breach the express terms of the contract."

Wilcox v. Sec. State Bank, 523 P.3d 277, 290 (Wyo. 2023) (quoting Skyco Res., LLP v. Fam. Tree

Corp., 512 P.3d 11, 25 (Wyo. 2022) (quoting Bear Peak Res., LLC v. Peak Powder River Res.,

LLC, 403 P.3d 1033, 1054 (Wyo. 2017))).[11]  To the extent that this finding is inconsistent with

Back and Armijo, the Court disagrees with those decisions as neither Back nor Armijo cite any

New Mexico state court decision holding that a claim for breach of the implied covenant of good

faith and fair dealing is derivative of (or dependent upon) a separate breach of contract claim, and

this Court has found no such authority.  See Back, 2012 WL 6846397, at *22; Armijo, 2009 WL

---

[11]        New Mexico, like Wyoming, "follows the Restatement [(Second) of Contracts § 205] in recognizing
that every contract is governed by an implied covenant of good faith."  Cafeteria Operators, L.P. v. Coronado-Santa
Fe Assocs., L.P., 952 P.2d 435, 440 (N.M. Ct. App. 1997)).  See also Wilcox v. Sec. State Bank, 523 P.3d 277, 289
(Wyo. 2023) ("'Wyoming has adopted the Restatement (Second) of Contracts § 205, which provides that 'every
contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.''")
(quoting Skyco Res., LLP v. Fam. Tree Corp., 512 P.3d 11, 24 (Wyo. 2022) (quoting Bear Peak Res., LLC v. Peak
Powder River Res., LLC, 403 P.3d 1033, 1053 (Wyo. 2017))).

1329192, at *7.  The Court also rejects Defendants' reliance on <u>Mackensen</u>, which applied Kansas law.

For these reasons, Defendants' Motion for Judgment on the Pleadings as to Count V is denied as to the City and granted as to Defendant Stark.

  **e.  Count VI**

Count VI seeks a declaratory judgment that "Plaintiff has the right to use the apron around Hangar 85 even when BLM may want or need to use it."  ECF No. 38 ¶ 59.

Defendants argue that Plaintiff does not allege that it is currently being denied use of the apron around Hangar 85, and therefore Count VI is subject to dismissal because it does not involve an actual controversy.  ECF No. 139 at 14 (citing <u>Columbian Fin. Corp. v. BancInsure, Inc.</u>, 650 F.3d 1372, 1376 (10th Cir. 2011) (citing 28 U.S.C. § 2201(a))).

Plaintiffs argue that Count VI satisfies two exceptions to the mootness doctrine: (1) voluntary cessation of unlawful conduct and (2) capable of repetition yet evading review.  ECF No. 144 at 23-24.  They argue that

> it is reasonable to infer from the allegations in the Complaint that the exclusion of [Plaintiff] from the Zone of Exclusion in favor of BLM's exclusive use is ongoing. It is undisputed that the reason for the exclusion was to allow BLM to use a slurry base next to the Zone of Exclusion to fill planes with slurry for fire suppression during fire season. Fire season is almost upon us again and will be for part of every year hereafter. If [Plaintiff] is no longer subject to exclusion from the Zone of Exclusion it is because [the City] has decided voluntarily to cease excluding or because it is not fire season. Fire season by its nature is of too short a duration to allow adjudication of this case before it is over, and there is a reasonable expectation that during fire season [the City] will re-impose the exclusion.

<u>Id.</u> at 24.

In their Reply, Defendants fail to address the exceptions to the mootness doctrine.  See ECF No. 145 at 8.  They simply argue that "there is not any actual controversy requiring a declaratory judgment from the Court."  Id.

"'Under the federal Declaratory Judgment Act, Congress has authorized declaratory judgements only 'in . . . case[s] of actual controversy.''"  Jordan v. Sosa, 654 F.3d 1012, 1026 (10th Cir. 2011) (quoting Olin v. Consol. Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) (quoting 28 U.S.C. §2201) (cleaned up)).  "'Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit.'"  Id. at 1025 (quoting Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1109 (10th Cir. 2010)).

"'The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction.'"  Id. at 1023 (quoting 15 James W. Moore & Martin H. Redish, Moore's Federal Practice § 101.90, at 101–237 (3d ed. 2010)).  "In other words, '[m]ootness is found when events outside the litigation make relief impossible . . . . Events may supersede the occasion for relief, particularly when the requested relief is limited.'"  Id. (quoting 13C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.3.1, at 56, 59–60 (3d ed. 2008)).

"The mootness doctrine relates to both '[t]he constitutional case or controversy requirement of Article III . . . , as well as the prudential considerations underlying justiciability.'"  Id. (citing 15 Moore's Federal Practice § 101.90, at 101–237).  "Accordingly, '[c]ourts recognize two kinds of mootness: constitutional mootness and prudential mootness.'"  Id. (quoting Rio Grande Silvery Minnow, 601 F.3d at 1121).

38

"'Under the constitutional mootness doctrine, the suit must present a real and substantial controversy with respect to which relief may be fashioned.  Also, the controversy must remain alive at the trial and appellate stages of the litigation.'"  Id. at 1023-24 (quoting Fletcher v. United States, 116 F.3d 1315, 1321 (10th Cir. 1997)).  "Constitutional mootness is grounded in the requirement that 'any case or dispute that is presented to a federal court be definite, concrete, and amenable to specific relief.'"  Id. at 1024 (quoting 15 Moore's Federal Practice § 101.90, at 101–237).  "Consequently, the constitutional mootness doctrine focuses upon whether 'a definite controversy exists throughout the litigation and whether conclusive relief may still be conferred by the court despite the lapse of time and any change of circumstances that may have occurred since the commencement of the action.'"  Id. (quoting 15 Moore's Federal Practice § 101.90, at 101–237).

"'Even if a case is not constitutionally moot, a court may dismiss [a] case under the prudential-mootness doctrine if the case 'is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'"  Id. (quoting Rio Grande Silvery Minnow, 601 F.3d at 1121 (quoting Fletcher, 116 F.3d at 1321)).  "Prudential mootness therefore 'addresses 'not the power to grant relief[,] but the court's discretion in the exercise of that power.'"  Id. (quoting S. Utah Wilderness All. v. Smith, 110 F.3d 724, 727 (10th Cir. 1997) (quoting Chamber of Com. v. U.S. Dep't of Energy, 627 F.2d 289, 291 (D.C. Cir. 1980))).  "In general, the prudential mootness doctrine only applies where . . . a plaintiff seeks injunctive or declaratory relief."  Id. (citing Rio Grande Silvery Minnow, 601 F.3d at 1122; Bldg. & Constr. Dep't v. Rockwell Int'l Corp., 7 F.3d 1487, 1492 (10th Cir. 1993)).

"Where a plaintiff requests equitable relief, a mere showing that he maintains a personal stake in the outcome of the controversy is insufficient." Id. (citing City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983)).  "Rather, a plaintiff must additionally demonstrate 'an adequate basis for equitable relief'—that is, '[a] likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.'"  Id. (quoting O'Shea v. Littleton, 414 U.S. 488, 499, 502 (1974)).

 "Courts recognize two 'exceptions' to the mootness doctrine—situations in which a case remains subject to federal court jurisdiction notwithstanding the seeming extinguishment of any live case or controversy."  Brown v. Buhman, 822 F.3d 1151, 1166 (10th Cir. 2016).  "One exception involves disputes that are 'capable of repetition, yet evading review.'"  Id.  "'The exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"  Id. (quoting Fed. Election Comm'n v. Wis. Right to Life, Inc., 551 U.S. 449, 462 (2007)).  The plaintiff bears the burden of establishing both elements.  Jordan, 654 F.3d at 1035.  This exception is "narrow" and "'is only to be used in exceptional situations.'"  Id. at 1034-35 (quoting McAlpine v. Thompson, 187 F.3d 1213, 1216 (10th Cir. 1999)).

"The second exception to mootness . . . concerns 'voluntary cessation' of the defendant's conduct."  Brown, 822 F.3d at 1166 (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)).  "Under this exception, 'voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.'"  Id. (quoting Know v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 307 (2012)).  "This rule is designed to prevent gamesmanship. If voluntary cessation

automatically mooted a case, 'a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'" Id. (quoting Already, 568 U.S. at 91). "A defendant's voluntary cessation may moot a case, however, if the defendant carries 'the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" Id. (quoting Already, 568 U.S. at 91). "But the burden is not insurmountable, especially in the context of government enforcement." Id. at 1167. "'In practice, [this] heavy burden frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case.'" Id. (quoting Rio Grande Silvery Minnow, 601 F.3d at 1116). The Tenth Circuit has "indicated that government 'self-correction . . . provides a secure foundation for mootness so long as it seems genuine.'" Id. at 1167-68 (quoting Rio Grande Silvery Minnow, 601 F.3d at 1118).

Here, construed in the light most favorable to Plaintiff, the Second Amended Complaint alleges that Plaintiff is currently being excluded from the Zone of Exclusion. Specifically, it alleges that on January 27, 2022, Defendants notified Plaintiff that no aircraft could be parked in the Zone of Exclusion as of April 1, 2022, because the area needed to be used by BLM. ECF No. 38 ¶ 20. Defendants subsequently advised Plaintiff to discontinue use in the Zone of Exclusion by March 25, 2022. Id. ¶ 21. "[Plaintiff]'s exclusion from the Zone of Exclusion has harmed, is harming, and will continue harming [Plaintiff]'s business and causing [Plaintiff] damages and threatening [Plaintiff]'s ability to operate at ROW . . . ." Id. ¶ 28 (emphasis added).

Nothing in the Second Amended Complaint suggest that Plaintiff is currently being permitted to use the Zone of Exclusion. Nor does it allege that the City voluntarily ceased excluding Plaintiff from the Zone of Exclusion or that BLM only uses the Zone of Exclusion during fire season. Consequently, the Court finds that Count VI is not moot.

41

However, the Court further finds that because the Second Amended Complaint alleges that "Defendant Stark's employment with [the City] has ended[,]" id. ¶ 34, Plaintiff can obtain no relief against Defendant Stark with regard to using the Zone of Exclusion.  Consequently, the Court finds that Count VI fails to state a claim against Defendant Stark.[12]

For these reasons, Defendants' Motion for Judgment on the Pleadings as to Count VI is denied as to the City and granted as to Defendant Stark.

## IV.   Conclusion

Therefore, it is **HEREBY ORDERED** that:

1.   Defendants City of Roswell, New Mexico and Scott Starks's Motion for Judgment on the Pleadings, ECF No. 139, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order;

2.   Defendant City of Roswell, New Mexico is entitled to judgment on the pleadings as to Counts I, II, and III; and

3.   Defendant Scott Stark is entitled to judgment on the Pleadings as to Counts I, II, III, V, and VI, and shall be **TERMINATED** from this action.[13]

_Margaret Strickland_

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[12]      In any event, it appears that Count VI is asserted against the City only.  See ECF No. 38 ¶ 58 (alleging that "[a]n actual case and controversy, ripe for determination exists between Plaintiff and Defendant Roswell regarding whether Plaintiff has the right to use the apron around Hangar 85, including during times when BLM may want or need to use it") (emphasis added).

[13]      On October 31, 2023, the Court issued an Order granting Defendants' Motion to Dismiss the negligence claim asserted in Count IV.  ECF No. 92.